## SHERRY NUNNO ET AL. *v.* WALTER WIXNER II ET AL. (SC 16392)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.[1]

[1] This case was argued on February 15, 2001, before a panel of this court consisting of Chief Justice Sullivan and Justices Katz, Palmer, Vertefeuille and Zarella. Thereafter, the court pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Justices Borden and Norcott were added to the panel, and they have read the record, briefs and transcripts of the original oral argument.

. . . ."

Argued February 15—officially released August 21, 2001

*Joseph De Lucia,* for the appellant (named plaintiff).

*Catherine S. Nietzel,* for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. The sole issue in this appeal is whether the provisions of General Statutes § 52-192a,[2]

[2] General Statutes § 52-192a provides: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the "offer of judgment" shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to

concerning an offer of judgment by a plaintiff, apply to a judgment entered as a result of a mandatory arbitration proceeding pursuant to General Statutes § 52-549u.[3] We conclude that they do not.

The following undisputed facts are relevant to this appeal. On December 10, 1997, the plaintiff, Sherry Nunno,[4] was the operator of a motor vehicle that was involved in a collision with a motor vehicle operated by the defendant Walter Wixner II and owned by the defendant Walter Wixner (defendants). After filing this action, the plaintiff filed an offer of judgment for $19,000 pursuant to § 52-192a (a).[5] The defendants did not accept the offer of judgment.

Subsequently, the case was referred to an arbitrator under the court's mandatory arbitration program pursu-

abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

Section 52-192a was amended by No. 01-71, § 1, of the 2001 Public Acts, to require any offer of judgment to be filed not later than thirty days prior to trial. A few minor technical changes also were made. These changes do not take effect until October 1, 2001, and are not relevant to this appeal. For purposes of this opinion, references herein to § 52-192a are to the 2001 revision.

[3] General Statutes § 52-549u provides: "In accordance with the provisions of section 51-14, the judges of the Superior Court may make such rules as they deem necessary to provide a procedure in accordance with which the court, in its discretion, may refer to an arbitrator, for proceedings authorized pursuant to this chapter, any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. An award under this section shall not exceed fifty thousand dollars, exclusive of legal interest and costs. Any party may petition the court to become eligible to participate in the arbitration process as provided in this section."

[4] Although Joseph Taft, a passenger in the vehicle operated by Nunno at the time of the collision, was also a plaintiff in this action, he is not participating in this appeal, which is being pursued by the named plaintiff alone. We, therefore refer to Nunno as the plaintiff throughout this opinion.

[5] See footnote 2 of this opinion.

ant to § 52-549u and Practice Book § 23-61.[6] After a hearing, the arbitrator issued a decision awarding the plaintiff $21,945. The arbitrator's decision and award subsequently became a judgment of the court pursuant to General Statutes § 52-549z[7] and Practice Book § 23-66.[8]

---

[6] Practice Book § 23-61 provides: "The court, on its own motion, may refer to an arbitrator any civil action in which, in the discretion of the court, the reasonable expectation of a judgment is less than $50,000, exclusive of interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. An award under this section shall not exceed $50,000, exclusive of legal interest and costs. Any party may petition the court to participate in the arbitration process hereunder."

[7] General Statutes § 52-549z provides: "(a) A decision of the arbitrator shall become a judgment of the court if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section

"(b) A decision of the arbitrator shall become null and void if an appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

"(c) For the purpose of this section the word "decision" shall include a decision and judgment rendered pursuant to subsection (a) of section 52-549y, provided the appeal is taken by a party who did not fail to appear at the hearing, and it shall exclude any other decision or judgment rendered pursuant to said section.

"(d) An appeal by way of a demand for a trial de novo must be filed with the court clerk within twenty days of the filing of the arbitrator's decision and it shall include a certification that a copy thereof has been served on each counsel of record, to be accomplished in accordance with the rules of court. The decision of the arbitrator shall not be admissible in any proceeding resulting after a claim for a trial de novo or from a setting aside of an award in accordance with section 52-549aa."

[8] Practice Book § 23-66 provides: "(a) A decision of the arbitrator shall become a judgment of the court if no claim for a trial de novo is filed in accordance with subsection (c).

"(b) A decision of the arbitrator shall become null and void if a claim for a trial de novo is filed in accordance with subsection (c).

"(c) A claim for a trial de novo must be filed with the court clerk within twenty days of the filing of the arbitrator's decision. Thirty days after the filing of a timely claim for a trial de novo the court may, in its discretion, schedule the matter for a trial within thirty days thereafter. Only a party who appeared at the arbitration hearing may file a claim for a trial de novo. The decision of the arbitrator shall not be admissible in any proceeding resulting after a claim for a trial de novo pursuant to this section or from a setting aside of an award pursuant to General Statutes § 52-549aa."

The plaintiff thereafter filed a "Motion to Determine Plaintiff's Offer of Judgment," seeking an award of 12 percent interest on the judgment pursuant to § 52-192a because the amount awarded by the arbitrator, which became the judgment of the court, exceeded the amount of the plaintiff's offer of judgment. The trial court ultimately denied the plaintiff's motion.[9] This appeal followed.[10]

On appeal, the plaintiff claims that the offer of judgment statute, § 52-192a, applies to court-mandated arbitration because the arbitration proceeding was part of a civil action. Specifically, the plaintiff asserts that the arbitration proceeding constituted a civil action because it was required by the court and was held in the form of a summary trial.[11] In response, the defendants assert that the offer of judgment statute does not apply to a court-mandated arbitration proceeding because it is not a trial within the meaning of § 52-192a (b) and that applying offer of judgment interest would under-

[9] On January 24, 2000, the trial court initially granted the plaintiff's motion, *without objection*. On February 9, 2000, the defendants filed a motion for reconsideration, stating that there was in fact an objection to the plaintiff's motion. On June 12, 2000, the trial court heard oral argument on the defendant's motion for reconsideration. The trial court then issued its decision on July 7, 2000, holding that "mandatory arbitration is not a trial and therefore the offer of judgment provisions do not apply."

[10] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[11] The plaintiff also argues that applying offer of judgment interest to awards arising from a jury or bench trial and not applying it to awards arising from arbitration proceedings violates the equal protection clauses of the state and federal constitution. The plaintiff did not adequately brief these claims, however, and, therefore, she is deemed to have abandoned them. See Practice Book § 67-4; *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 38, 717 A.2d 77 (1998) (issues not adequately briefed may be deemed abandoned); see also *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 482, 582 A.2d 190 (1990).

mine the purposes of the court-mandated arbitration statute. We agree with the defendants and conclude that the legislature did not intend § 52-192a (b) to apply to court-mandated arbitration proceedings. Accordingly, we affirm the judgment of the trial court.

Our resolution of the plaintiff's claim is guided by well established principles of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Finally, because the question presented by this appeal involves an issue of statutory construction, our review is plenary." (Internal quotation marks omitted.) *Winchester* v. *Northwest Associates*, 255 Conn. 379, 386, 767 A.2d 687 (2001).

The plain language of § 52-192a (b) supports our conclusion that offer of judgment interest does not apply to judgments resulting from arbitration proceedings. The statute provides in part that "[a]fter trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendants failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ." General Statutes § 52-192a (b). The wording of § 52-192a (b) indicates the legislature's intention that offer of judgment interest apply only "after trial . . . ."

We conclude that an arbitration proceeding pursuant to General Statutes § 52-549u and Practice Book § 23-61 is not a trial within the meaning of § 52-192a (b).

The trial court is authorized to refer to an arbitrator any civil action in which the court has a reasonable expectation that the judgment will be less than $50,000. See General Statutes § 52-549u and Practice Book § 23-61. In such court-mandated arbitration proceedings, a lawyer with a minimum of five years civil litigation experience serves as the arbitrator. See General Statutes § 52-549w[12] and Practice Book § 23-60.[13] No record is made of the proceedings and strict adherence to the rules of evidence is not required. See Practice Book

[12] General Statutes § 52-549w provides in relevant part: "(a) Upon publication of a notice in the Connecticut Law Journal, any commissioner of the Superior Court admitted to practice in this state for at least five years, who has civil litigation experience and who is willing and able to act as an arbitrator, may submit his name to the Office of the Chief Court Administrator for approval to be placed on a list of available arbitrators for one or more judicial districts. The criteria for selection and approval of arbitrators shall be promulgated by the judges of the Superior Court. Upon selection and approval by the Chief Court Administrator, for such term as he may fix, the arbitrators shall be sworn or affirmed to try justly and equitably all matters at issue submitted to them. The Chief Court Administrator, in his discretion, may at any time revoke any such approval.

"(b) Each arbitrator shall receive one hundred dollars for each day he is assigned to a courthouse facility to conduct proceedings as an arbitrator and an additional twenty-five dollars for each decision filed with the court. In difficult or extraordinary cases, the Chief Court Administrator may, in his discretion, make a further allowance not to exceed two hundred dollars for services rendered attendant to but not part of the hearing. . . ."

[13] Practice Book § 23-60 provides: "(a) Upon publication of notice requesting applications, any commissioner of the superior court admitted to practice in this state for at least five years, and who possesses civil litigation experience may submit his or her name to the office of the chief court administrator for approval to be placed on a list of arbitrators for one or more judicial districts.

"(b) The chief court administrator shall have the power to designate arbitrators for such term as the chief court administrator may fix and, in his or her discretion, to revoke such designation at any time.

"(c) Applicants and arbitrators must satisfactorily complete such training programs as may be required by the chief court administrator."

§ 23-63.[14] The arbitrator is required to submit a decision in writing within 120 days after the hearing. See Practice Book § 23-64.[15] The parties then have the opportunity to request a trial de novo pursuant to Practice Book § 23-66 (c)[16] within twenty days of the filing of the arbitrator's decision. If neither party requests a trial de novo within twenty days, the decision of the arbitrator becomes the judgment of the court.[17] See Practice Book § 23-66 (a).

Court-mandated arbitration proceedings pursuant to § 52-549u do not include many of the distinctive hallmarks of a trial. In a case involving private arbitration pursuant to a collective bargaining agreement, the United States Supreme Court concluded that "[a]rbitration differs from judicial proceedings in many ways: arbitration carries no right to a jury trial as guaranteed by the Seventh Amendment; arbitrators need not be instructed in the law; they are not bound by rules of evidence; they need not give reasons for their awards; witnesses need not be sworn; the record of proceedings need not be complete; and judicial review, it has been

---

[14] Practice Book § 23-63 provides: "In matters submitted to arbitration no record shall be made of the proceedings and the strict adherence to the civil rules of evidence shall not be required."

[15] Practice Book § 23-64 provides: "(a) The arbitrator shall state in writing the decision on the issues in the case and the factual basis of the decision. The arbitrator shall include in the decision the number of days on which hearings concerning that case were held.

"(b) Within 120 days of the completion of the arbitration hearing the arbitrator shall file the decision with the clerk of the court together with sufficient copies for all counsel."

[16] See footnote 8 of this opinion.

[17] We disagree with the dissent's conclusion that the use of the term "trial de novo" suggests that the nonbinding arbitration was a trial. As Representative Michael P. Lawlor stated during legislative debate on a bill that subsequently amended § 52-549u, "[e]very party who is affected by such an arbitration decision shall have a right to *elect a trial*, another trial, a new trial, a trial [de novo]." (Emphasis added.) 40 H.R. Proc., Pt. 4, 1997 Sess., p. 1388. "[I]f you don't agree with the outcome [you are] able to go back to square one and ask for a trial from the start." Id., p. 1392.

held, is extremely limited." *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650, 664, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965). In another case the United States Supreme Court also distinguished arbitration from judicial proceedings, concluding that "arbitral factfinding is generally not equivalent to judicial factfinding. . . . [T]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." (Internal quotation marks omitted.) *McDonald* v. *West Branch*, 466 U.S. 284, 291, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984). This court also has distinguished arbitration from judicial proceedings, concluding that an arbitration proceeding is not an "action" for purposes of the statute of limitations. See *Dayco Corp.* v. *Fred T. Roberts & Co.*, 192 Conn. 497, 503, 472 A.2d 780 (1984). In doing so, the court concluded that "arbitration proceedings do not occur in court, indeed that their very purpose is to avoid the formalities, the delay, the expense and vexation of ordinary litigation. . . . [T]hese proceedings are not governed by our rules of procedure. . . . [A]n arbitration proceeding is not an action within the meaning of that word as used in the [s]tatute of [l]imitations." (Citations omitted; internal quotation marks omitted.) Id.

An examination of the arbitration proceeding in the present case supports our conclusion that the arbitration proceeding was not conducted as a trial. Although the arbitrator stated in his decision that "[this] hearing was held in the form of a summary trial," no witnesses testified for either party and no formal exhibits were offered. The parties merely submitted copies of a police report, photographs, transcripts of depositions, medical reports and medical bills. The parties also summarized their respective cases through their counsel. After

reviewing all of the information provided, the arbitrator issued his nonbinding award. The arbitration proceedings in this case differed greatly from a trial. The procedures were informal and parties were allowed to present unsworn evidence. None of the rules of evidence applied in this proceeding. In addition, the proceeding was presided over by a nonjudicial officer, whose decision was not binding on the parties. The court-mandated arbitration proceeding in this case did not constitute a trial.

An examination of the definition of the word "trial" found in Black's Law Dictionary further supports our conclusion that arbitration proceedings do not constitute a trial for the purposes of § 52-192a (b). Black's Law Dictionary (7th Ed. 1999) defines trial as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." It further defines "judicial" as "[o]f or relating to, or by the court" and "determination" as "[a] final decision by a court or administrative agency . . . ." Id. The court-mandated arbitration proceeding in this case was not formal, was not presided over by a judge, and did not result in a binding determination of any of the legal claims. The arbitration proceeding therefore did not constitute a trial.

The absence of any express language referring to arbitration proceedings in § 52-192a (b) further confirms our conclusion that offer of judgment interest does not apply to judgments resulting from arbitration awards. The legislature has adopted several statutes that establish procedures for converting arbitration awards into judgments of the court. See General Statutes § 52-549z (a); see also General Statutes § 52-417 et seq. Section 52-417 et seq., which provide generally applicable procedures for confirming, vacating and modifying arbitration awards by court order, were enacted prior to the legislature's adoption of the offer of

judgment statute. The legislature was, therefore, aware that arbitration awards can result in judgments of the court when it adopted § 52-192a (b). "The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them. *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 554, 546 A.2d 226 (1988)." (Internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 386, 698 A.2d 859 (1997). Despite its awareness that arbitration decisions can become judgments of the court, the legislature did not include judgments on arbitration awards within the express provisions of § 52-192a (b). Furthermore, the legislature has not amended § 52-192a (b) to include court-mandated arbitration proceedings since it adopted the statutes providing for court-mandated arbitration proceedings in 1982. The legislature's failure to include arbitration proceedings in the express language of § 52-192a (b) supports our conclusion that the legislature did not intend offer of judgment interest to apply to judgments resulting from arbitration proceedings.

The legislative history of the statutes providing for court-mandated arbitration provides strong support for our conclusion that § 52-192a (b) does not apply to judgments resulting from that arbitration process. This legislative history demonstrates that the legislature intended these arbitration proceedings to be a form of alternate dispute resolution designed to assist parties to settle cases voluntarily. In 1997, during the course of the legislative debates concerning the enactment of the bill that later amended § 52-549u, the members of the House of Representatives discussed the purpose of the court-mandated arbitration proceedings. In the course of the debate, Representative Michael P. Lawlor, a proponent of the bill, was asked why the rules of evidence would not apply in these arbitration proceed-

ings. 40 H.R. Proc., Pt. 4, 1997 Sess., p. 1391. Representative Lawlor replied that "[t]his whole process of arbitration is an alternate dispute resolution mechanism which [is] intended to avoid unnecessary court delays. *In effect these are the two parties sitting down with an impartial hearing officer to figure out if there is a resolution to the case which would avoid a lengthy and expensive trial. . . . [T]his is what you might consider an elaborate pre-trial discussion.*" (Emphasis added.) Id., pp. 1391–92. Representative Lawlor went on to indicate that the purpose of the legislation was "essentially trying to encourage as many people as possible to go this route for a relatively small case where there are relatively simple issues at hand." Id., p. 1393. Representative Lawlor's comments clearly indicate that the legislature did not understand these arbitration proceedings to be a trial, or its equivalent. To the contrary, we conclude that the legislature intended these arbitration proceedings to be a desirable, informal means of resolving disputes *before* trial. The legislature's understanding of these arbitration proceedings as a form of alternate dispute resolution, the use of which the legislature wanted to encourage, further supports our conclusion that § 52-592a (b) does not apply to a judgment entered as a result of court-mandated arbitration proceedings because, if the statute did apply, the parties would have an incentive to reject the arbitrator's award and seek a trial de novo in order to avoid the payment of offer of judgment interest. This result would contravene the legislature's intention in adopting court-mandated arbitration.[18]

[18] The dissent cites to a portion of the legislative history of § 52-549u in support of its statement that one of the stated goals of the statute was to reduce the backlog of civil jury cases "independent of the issue of settlement." We disagree that the backlog is reduced "independent of . . . settlement." Close analysis of the operation of § 52-549u reveals that the backlog of civil jury cases is reduced only if the parties agree to accept the arbitrator's award, which is otherwise *nonbinding*. After the arbitrator renders his or her award, either party can reject it by simply requesting a trial de novo. If both parties choose to accept the award by failing to request a trial de

The punitive nature of the offer of judgment statute also reinforces our conclusion that § 52-549u does not apply to arbitration judgments. The punitive nature of § 52-192a has been recognized repeatedly. "An award of interest pursuant to § 52-192a (b) is punitive in nature . . . . *Crowther* v. *Gerber Garment Technology, Inc.*, 8 Conn. App. 254, 267, 513 A.2d 144 (1986); *Kusha* v. *Respondowski*, 3 Conn. App. 570, 574, 490 A.2d 1014 (1985). . . . This interest is mandated when the amount recovered is greater than or equal to the offer of judgment; see General Statutes § 52-192a (b); and that amount can include interest and attorney's fees; *Crowther* v. *Gerber Garment Technology, Inc.*, supra, 270–71; as well as double or treble damages. *Gionfriddo* v. *Avis Rent a Car System, Inc.*, 192 Conn. 301, 307, 472 A.2d 316 (1984)." *Gillis* v. *Gillis*, 21 Conn. App. 549, 554, 575 A.2d 230, cert. denied, 215 Conn. 815, 576 A.2d 544 (1990). The offer of judgment statute was "enacted to promote fair and reasonable pretrial compromises of litigation" by penalizing defendants who do not settle cases prior to trial. *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 651, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). By awarding 12 percent interest on all amounts recovered, including interest and attorney's fees, § 52-192a "imposes a penalty for wasting this state's judicial resources . . . [and serves as] an indigenous procedural device for promoting judicial economy . . . ." Id., 655.

The punitive nature of the offer of judgment statute is inconsistent with the legislature's intention in enacting court-mandated arbitration. The legislature intended to

novo, judgment enters consistent with the award. We see this process as akin to settlement, in that a neutral third party, after hearing from both parties, proposes a resolution that the parties are free to accept or reject. While the dissent focuses on the fact that participation in the arbitration is mandatory, we focus on the fact that if the case is resolved, the resolution occurs only as a result of the voluntary agreement of the parties.

encourage parties in fairly simple cases to use the arbitration proceeding to resolve cases without the need for lengthy and expensive trials. 40 H.R. Proc., supra, pp. 1391–92. Imposing a substantial penalty on a defendant who voluntarily settles a case as a result of court-mandated arbitration would both discourage such settlements and encourage demands for trials de novo. Both of these consequences would be in contrast to the legislative purpose to promote court-mandated arbitration as an additional method of alternate dispute resolution.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and PALMER, Js., concurred.

KATZ, J., with whom SULLIVAN, C. J., and ZARELLA, J., join, dissenting. At the core of this opinion is whether the offer of judgment statute, General Statutes § 52-192a, applies to court-mandated arbitration proceedings commenced pursuant to General Statutes § 52-549u. Today, based upon the "plain" language of § 52-192a and the legislative history of that statute, the majority concludes that § 52-192a does not apply to court-mandated arbitration proceedings. Because I disagree with this conclusion, I respectfully dissent.

The majority places heavy emphasis on the punitive nature of § 52-192a, concluding that applying the statute to court-mandated arbitration proceedings would undermine the legislature's intent in enacting court-mandated arbitration, namely, to provide an incentive to parties to "settle cases voluntarily." The majority also focuses on the phrase "after trial" as it is used in § 52-192a (b), concluding that it *necessarily* refers to a judicial proceeding that is presided over by a *judge* and formally governed by the rules of evidence, not to a court-mandated arbitration proceeding that is presided over by a nonjudicial officer in which a formal application of the rules of evidence is not required. Accord-

ingly, the majority concludes that the arbitration proceeding in this case was not a trial, and therefore, that the offer of judgment statute does not apply.

Although I agree with the majority that one *effect* of the arbitration program is that it aids in settling cases, I disagree that that is the primary purpose of the program. More importantly, I fail to see how a goal of encouraging parties to settle cases voluntarily applies in the context of this case in which neither party *elected* to participate in the arbitration program. Furthermore, I do not agree that the punitive effect of § 52-192a undermines § 52-549u. Finally, although the language of § 52-192a is hardly a model of clarity, I do not read the legislature's use of the word "trial" as narrowly as the majority. Accordingly, I believe that mandatory arbitration proceedings constitute "trials" within the meaning of § 52-192a.

A

My analysis begins with the purpose of § 52-192a. "In all litigation, a party faces the potential adverse consequences of a defeat, including the expense of a trial and costs. Section 52-192a provides an additional incentive to settle a lawsuit and avoid a trial in certain cases by imposing an increased penalty upon a nonsettling litigant." *Murphy* v. *Marmon Group, Inc.*, 562 F. Sup. 856, 859 (D. Conn. 1983); see also *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 301, 305, 472 A.2d 316 (1984) (purpose of § 52-192a is encouragement of settlements); *Lutynski* v. *B. B. & J. Trucking, Inc.*, 31 Conn. App. 806, 814, 628 A.2d 1 (1993) (statute "encourage[s] early, fair, and reasonable settlements and . . . encourage[s] plaintiffs to make offers of judgments promptly" by penalizing defendants who do not settle cases prior to trial), aff'd, 229 Conn. 525, 642 A.2d 7 (1994). As the majority correctly notes, quoting *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn.

App. 640, 655, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990), "§ 52-192a 'imposes a penalty for wasting this state's judicial resources . . . [and serves] as an indigenous procedural device for promoting judicial economy . . . .' "

"Consistent with this broad statutory intent, § 52-192a (a) authorizes a plaintiff's offer of judgment . . . [in] *any* civil action based upon contract or for the recovery of money . . . ." (Emphasis added; internal quotation marks omitted.) *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 305. Thus, the plain language of this provision grants a plaintiff the unqualified right to submit an offer of judgment to a defendant in *any contract action* for the recovery of money.[1] No distinction is made between actions in which a trial judge presides and actions in which a trial judge refers the case to an arbitrator.

The issue is whether the purpose of § 52-192a can be accomplished without undermining the goal of arbitration. Unlike the majority, I consider that both statutes can be accommodated. First, although I recognize that settling cases may be one *effect* of arbitration in general, and indeed, an ancillary benefit of § 52-549u, I do not agree that that is the *primary* goal of § 52-549u. The legislative history of § 52-549u indicates that the primary goal in enacting § 52-549u was to *reduce the backlog of civil jury cases*, independent of the issue of settlement.[2] See 25 S. Proc., Pt. 11, 1982 Sess., p. 3658,

---

[1] In this case, all parties agree that the arbitration proceeding constituted a civil action.

[2] In 1997, the legislature amended § 52-549u. See Public Acts 1997, No. 97-24, § 2 (P.A. 97-24) (effective January 1, 1998). Public Act 97-24, among other things, increased the estimated worth of a case for which a trial judge could refer to arbitration from $15,000 to $50,000. In addition, P.A. 97-24 allowed *any party* to petition the court to become eligible to participate in the arbitration process. Prior to that amendment, *only the trial court*, in its discretion, could refer a case to an arbitrator. See General Statutes (Rev. to 1997) § 52-549u. Another amendment, No. 97-40, § 7, of the 1997 Public Acts, made a minor technical change that is not relevant to this appeal.

remarks of Senator Howard T. Owens Jr. (explaining that "[t]he court system in the State is being choked by new cases . . . all types of civil cases . . . . It's just, [courts are] inundated with the stuff and [at] some stage we're going to have to start weeding this out and I think this is a step in the right direction."); 25 S. Proc., supra, p. 3660, remarks of Senator Eugene A. Skowronski (responding that "[m]aybe there is some merit to the concept that it may relieve some of the overcrowding, but to mandate this kind of system on a statewide basis as this bill is doing is a serious mistake for our state"); 25 H.R. Proc., Pt. 24, 1982 Sess., p. 7665, remarks of Representative Richard D. Tulisano (stating that purpose of court-mandated arbitration is to *"reduce judicial backlog,* particularly in civil matters" [emphasis added]); 25 H.R. Proc., supra, p. 7666, remarks of Representative Richard O. Belden (noting that "we still don't seem to be able to take care of the *backlog* in the system" [emphasis added]); see also 40 S. Proc., Pt. 4, 1997 Sess., pp. 1260–1261, remarks of Senator Thomas F. Upson ("[W]hatever we can do to *unclog the system* . . . is good . . . . It's *not an alternate dispute,* it's arbitration, but it's one way *to expedite cases* so that people won't be in the system two, three, four or five years." [Emphasis added.]).[3]

---

[3] The majority, however, refers to a specific comment made by Representative Michael P. Lawlor during debate in the House of Representatives concerning the enactment of a bill that later amended § 52-549u; see footnote 2 of this dissent; concluding that his comment clearly indicates that the legislature's purpose in enacting § 52-549u was to provide a form of alternate dispute resolution and assist parties in voluntarily settling cases. I disagree with the majority's characterization of Representative Lawlor's comments. In their entirety, I believe that Representative Lawlor's comments indicate that the purpose of § 52-549u was to speed up the process in small claims cases in order to decrease the backlog in the trial court. On the floor of the House of Representatives, Representative Lawlor was asked why, under the 1997 bill, the rules of evidence would no longer govern mandatory arbitration proceedings. He responded in general terms noting that the *"whole process of arbitration* is an alternate dispute resolution mechanism *which [was] intended to avoid unnecessary court delays.* In effect these are the two parties sitting down with an impartial hearing officer to figure

Second, because I believe that reducing the backlog in the trial courts is the primary purpose of § 52-549u, I disagree with the majority that the goal of § 52-549u would be undermined if the prejudgment interest statute were to be applied to defendants in the mandatory arbitration program. On the contrary, I believe that, in the context of a mandatory arbitration program, as utilized in this case,[4] the punitive component of § 52-192a used to encourage settlement, and thereby avoid wasting scarce judicial resources, can be harmonized

out if there is a resolution to the case which would *avoid a lengthy and expensive trial*. I suppose *on one level* this is what you might consider an elaborate pre-trial discussion. . . . If it, the current system, is to employ these strict rules of evidence which requires people to make objections against hearsay and other things . . . [i]t makes it a much more formal and therefore, *a lengthy process*. . . . So we're trying to balance *our interest in a speedy resolution of many cases* which really are not that complicated, with every party's right to a full and fair trial before a jury if they [later] choose." (Emphasis added.) 40 H.R. Proc., Pt. 4, 1997 Sess., pp. 1391–93.

Therefore, although I agree that Representative Lawlor believed that arbitration proceedings, in general, had the *effect* of encouraging people to settle cases due to their informal nature, it is clear to me that he believed the purpose of the arbitration program was to dispose of uncomplicated cases quickly. Indeed, eliminating the requirement that the rules of evidence must govern arbitration proceedings aids in this goal because cases can be resolved faster, enabling a greater number of cases to be referred from the trial court to arbitration.

As I have indicated; see footnote 2 of this dissent; in 1997, the legislature added the following language to § 52-549u: "*Any party* may petition the court to become eligible to participate in the arbitration process . . . ." (Emphasis added.) P.A. 97-24, § 2. Prior to that amendment, only "a court, in its discretion" could refer a case to an arbitrator. See General Statutes (Rev. to 1997) § 52-549u. Accordingly, when one or both parties *elect* to participate in the arbitration program, I agree that the legislature likely intended to encourage parties to resolve cases voluntarily without a lengthy and expensive trial. Indeed, this would also help to reduce the backlog of civil jury cases. When the parties have not agreed to participate in the arbitration program, however, and, in fact, have been *mandated* by the court to proceed down that path, I fail to see how they necessarily have any intent to settle the case voluntarily. Therefore, I do not agree with the majority that *mandatory* arbitration promotes the *voluntary settlement* of cases.

[4] As noted previously, all parties in this case agree that the arbitration proceeding was *court-mandated* and that neither party had elected to participate in the arbitration process.

with the goal of § 52-549u to reduce court backlog. Indeed, just as judicial resources are wasted in jury cases, they too are wasted, admittedly to a lesser degree, in court-mandated arbitration proceedings.[5]

Furthermore, I disagree with the majority that if § 52-192a were to apply in court-mandated arbitration proceedings, "the parties would have an incentive to reject the arbitrator's award and seek a trial de novo in order to avoid the payment of offer of judgment interest." I am hard pressed to believe that a defendant against whom the arbitrator has ruled would seek a new trial and the attendant expenses *simply* to avoid prejudgment interest. Moreover, should that unlikely event occur, the successful plaintiff would be free to waive the prejudgment interest in exchange for the binding "judgment of the court . . . ." See Practice Book § 23-66 (a) and (c).

## B

I now turn to the issue of whether mandatory arbitration proceedings constitute "trials" within the meaning of § 52-192a. Subsection (b) of § 52-192a, in defining the guidelines for calculating the interest award to be levied against the defendant for nonacceptance of the plaintiff's offer of judgment, refers to a "trial." In its discussion of the significance of the use of the word trial, the majority states that the term refers to "[a] formal *judicial* examination of evidence and determination of legal claims in an adversary proceeding." (Emphasis added.) The majority concludes that because "the court-mandated arbitration proceeding in this case was not formal, was not presided over by a judge, and did not result in a binding determination of any of the legal claims," it was not a trial.

---

[5] Arbitrators are paid $100 per day and an additional $25 for each decision filed with the court. In addition, the proceedings are conducted in the courtroom. General Statutes § 52-549w (b).

First, although I agree that the term trial *generally* refers to a formal judicial proceeding,[6] I do not agree that this is its *only* meaning. Cf. *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 306 (term "verdict" has more than one meaning). The word trial has been defined as " 'the investigation and decision of a matter in issue between parties *before a competent tribunal*, including all the steps taken in the case from its submission to the court or jury to the rendition of judgment.' " (Emphasis added.) *Tureck* v. *George*, 44 Conn. App. 154, 157, 687 A.2d 1309, cert. denied, 240 Conn. 914, 691 A.2d 1080 (1997), quoting 88 C.J.S., Trial § 1 (1955); see also 75 Am. Jur. 2d, Trial § 1 (1991) (defining trial as "a judicial *investigation* and determination of the issues between the parties to an action" [emphasis added]). The phrase "after trial" as it is used in § 52-192a (b) has been defined simply as referring to a "final judgment . . . ." (Internal quotation marks omitted.) *Tureck* v. *George*, supra, 162. In this case, there was an investigation by a competent tribunal, the arbitrator. In addition, I believe that this proceeding was judicial in nature because it took place at the direction and under the guidance of the trial court.[7] More-

---

[6] Although the majority maintains that the term trial does not encompass informal proceedings, we note that the definition of "determination" in Black's Law Dictionary (7th Ed. 1999), as relied upon by the majority, includes a final decision by an administrative agency. "[P]roceedings before administrative agencies, [however,] are informal and are conducted without regard to the strict rules of evidence . . . ." *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 207, 355 A.2d 21 (1974); see also *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 98, 596 A.2d 374 (1991)("administrative agencies are not governed by the strict rules of evidence"), citing *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 536, 525 A.2d 940 (1987); *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 249, 470 A.2d 1214 (1984) (administrative hearings are "informal and are conducted without regard to the strict rules of evidence"). This informality is indeed more consistent with how this dissent views trials, as discussed subsequently herein.

[7] It is also important to note that the arbitrator *expressly* referred to the proceeding as a "summary trial" in his memorandum of decision.

over, the majority's conclusion that the arbitration proceeding in this case did not result in any binding determination of any legal claims is not accurate. Pursuant to Practice Book § 23-66 (a), "a decision of the arbitrator shall become a *judgment of the court* if no claim for trial de novo is filed in accordance with subsection (c)." (Emphasis added.) Section 23-66 (c) provides in part that "[a] claim for a trial de novo must be filed with the court clerk within twenty days of the filing of the arbitrator's decision. . . ." In this case, the plaintiff did not file a claim for a trial de novo. Accordingly, the decision of the arbitrator was a binding final judgment of the court.

Furthermore, I believe that the majority's narrow interpretation of the word trial is inconsistent with this court's precedent in which we have interpreted terms under § 52-192a broadly. In *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 305–306, this court examined the word "verdict" as it was used in the revision of § 52-192a (b) that existed at the time of the 1982 trial court judgment in that case. The court concluded that under § 52-192a (b), verdict referred not only to jury trials, as that term generally connotes, but to court trials as well, despite the fact that the statute did not expressly specify that it applied to court cases.[8] Id., 305. Specifically, the court noted that § 52-192a (a) authorized a plaintiff's offer of judgment in "any civil action . . . ." (Internal quotation marks omitted.) Id. On that basis, the court concluded that "[t]hese broad statutory provisions should not be undermined solely because § 52-192a (b), in determining the penalty for nonacceptance of a plaintiff's offer of judgment, refers to a 'verdict.' " Id., citing *Murphy* v. *Marmon Group, Inc.*, supra, 562 F. Sup. 859–60. Similarly, in the present

---

[8] Section 52-192a (a) has since been amended and now expressly includes the phrase "prior to the rendering of a verdict by the jury *or an award by the court* . . . ." (Emphasis added.) See Public Acts 1994, No. 94-20.

case, I believe that we should interpret the term trial broadly to refer not only to court cases, but to court-mandated arbitration proceedings as well.

Second, the majority's reliance on the informal application of the rules of evidence in support of its conclusion that the arbitration proceeding did not constitute a trial is misplaced.[9] In fact, in juvenile proceedings, courts routinely relax their "strict application of the formal rules of evidence to reflect the informal nature of juvenile proceedings," yet such actions are still considered trials. Conn. Code Evid. § 1-1 (b), commentary; see also Practice Book § 34-2 (a) (juvenile proceedings are essentially civil in nature and should "at all times be as informal as the requirements of due process and fairness permit"); *In re Jessica B.*, 50 Conn. App. 554, 571, 718 A.2d 997 (1998) (formal rules of evidence given " 'liberal interpretation' "); *In re Cynthia A.*, 8 Conn. App. 656, 662, 514 A.2d 360 (1986) (in permitting hearsay evidence to be admitted, court noted that "in juvenile proceedings certain procedural informalities are constitutionally permissible, allowing, for example, the liberal interpretation of the formal rules of evidence as long as due process standards are observed").

The majority also makes much of the fact that the parties stipulated to all the evidence, indicating that this impacts the determination of whether the arbitration proceeding constituted a trial. Parties are entitled to stipulate to evidence. In fact, trial courts routinely allow parties to do so. Accordingly, I fail to see how this controls the issue of whether the proceeding at issue constituted a trial.

---

[9] Prior to P.A. 97-24, § 2, court-mandated arbitration proceedings were governed by the rules of evidence. See 40 H.R. Proc., Pt. 4, 1997 Sess., p. 1388, remarks of Representative Michael P. Lawlor (amendment "eliminates the requirement which has been the case up until now that the rules of evidence shall govern the proceedings"). This requirement was eliminated in order to speed up the arbitration process. Id., p. 1392.

Third, the fact that the proceeding was presided over by an arbitrator does not dictate whether there was a trial because the parties in this case did not *voluntarily* proceed to arbitration. Indeed, as noted previously, the trial court, exercising its discretion under to § 52-549u, referred this case to the arbitrator under its mandatory arbitration program. There was no agreement by the parties to proceed to arbitration with the goal of settling the case. Moreover, the decision by the parties not to file a claim for a trial de novo is no more or less a settlement than a decision by the parties not to appeal from a judgment of the trial court.

Finally, under Practice Book § 23-66 (a) and (c), the parties in this action were entitled to file a claim for a trial de novo within twenty days following the filing of the judgment by the arbitrator. The phrase, "trial de novo" clearly suggests that the arbitration proceeding was, in fact, a trial. Indeed, the legislative history of § 52-549u supports this view. During debate in the House of Representatives, Representative Michael P. Lawlor stated that "any finding of an arbitrator shall not be admissible in a *subsequent trial—what lawyers call a trial [de novo] or a trial from scratch* . . . . [E]very party who is affected by such an arbitration decision shall have a right to elect a *trial, another trial, a new trial, a trial [de novo]*." (Emphasis added.) 40 H.R. Proc., Pt. 4, 1997 Sess., p. 1388. Therefore, I do not agree with the majority that the arbitration proceeding in this case did not constitute a trial. Accordingly, I believe that § 52-192a, read in its totality, encompasses court-mandated arbitration proceedings. See *Murphy* v. *Marmon Group, Inc.*, supra, 562 F. Sup. 858 (§ 52-192 "clearly creates a *substantive* statutory right . . . . Rather than governing merely the manner and means of pursuing a claim in court, the law creates a right in all civil plaintiffs to claim interest on responsible

settlement offers . . . ." [Emphasis added; internal quotation marks omitted.]); *Lutynski* v. *B. B. & J. Trucking, Inc.*, supra, 31 Conn. App. 812 ("an award of interest under § 52-192a is mandatory, and the application of [the statute] does not depend on an analysis of the underlying circumstances of the case or a determination of the facts" [internal quotation marks omitted]).

In conclusion, because I believe that the offer of judgment statute should apply to court-mandated arbitration proceedings, I respectfully dissent.