RICHARD COSTANTINO ET AL. *v.* STANLEY
SKOLNICK ET AL.
(SC 18327)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

720

Argued September 8, 2009—officially released February 16, 2010

*David A. Slossberg*, with whom, on the brief, was *Brian J. Wheelin*, for the appellant (named plaintiff).

*John B. Farley*, with whom were *Daniel P. Scapellati* and, on the brief, *Brian J. Gedicks*, for the appellees (defendant Medical Professional Mutual Insurance Company et al.).

*Opinion*

KATZ, J. The named plaintiff, Richard Costantino,[1] appeals from the trial court's decision[2] denying his request for a declaratory judgment that the defendant Medical Professional Mutual Insurance Company doing business as ProMutual and ProSelect Insurance Company (ProMutual), the medical malpractice insurer for the named defendant, Stanley Skolnick, is required to pay the plaintiff offer of judgment interest that exceeds the limits of liability in Skolnick's policy. The plaintiff sought the declaration after the parties had entered into a settlement agreement (agreement) that required ProMutual to pay Skolnick's $1 million policy limit to the plaintiff and under which they stipulated that: (1) the agreement was to be considered a verdict and judgment in favor of the plaintiff for purposes of the offer of judgment statute, General Statutes (Rev. to 2005) § 52-192a;[3] and (2) the plaintiff would have been entitled

---

[1] Melissa Costantino, Richard Costantino's wife, also was included as a plaintiff in the original complaint in this action, which included a claim for loss of consortium. Because that claim was not realleged in the amended complaint and his wife no longer is involved in this case, we refer to Richard Costantino as the plaintiff.

[2] The plaintiff appealed from the trial court's decision to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes (Rev. to 2005) § 52-192a provides in relevant part: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not relief is sought, the plaintiff may, not later that thirty days before trial, file with the clerk of the court a written 'offer of judgment' signed by the plaintiff or the plaintiff's attorney, directed to the defendant or the defendant's attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. . . . Within sixty days after being notified of the filing of the 'offer of

to offer of judgment interest had the case been tried to conclusion. On appeal, the parties are aligned in their position that the trial court improperly declined to resolve the matter on the basis of the issue presented to it, in light of the stipulations in their agreement and the declaratory posture of the action. They disagree, however, as to whether the pertinent policy provision, which defined damages to include prejudgment interest, can be given effect so as to bar an award of such interest when the total recovery would exceed the policy limit. We conclude that the parties' stipulations did not satisfy the necessary predicate to an award of offer of judgment interest under § 52-192a, namely, a judgment in the plaintiff's favor after a trial. Accordingly,

judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or the defendant's attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within sixty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in the plaintiff's 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

we conclude that the trial court properly declined to reach the issue on which the plaintiff had sought a declaration. Therefore, we affirm the trial court's decision.

The record reveals the following undisputed facts and procedural history. In August, 2004, the plaintiff commenced a malpractice action against Skolnick, a general internist, and Skolnick's medical practice, the defendant Darien Medical Group, alleging that Skolnick's negligent failure to properly diagnose and treat the plaintiff had caused him to suffer severe hypertension and end stage renal failure, which ultimately required him to undergo a kidney transplant. The plaintiff, who had been a senior vice president with The Bank of New York, further alleged that these injuries had resulted in his reassignment to a position at substantially reduced compensation and had derailed his promising career. On September 30, 2005, the plaintiff filed an offer of judgment in the amount of $1 million, the limit of liability under Skolnick's malpractice policy with ProMutual. That offer was not accepted within the thirty day period mandated under § 52-192a (a) and, therefore, was deemed rejected as a matter of law.[4] See footnote 3 of this opinion.

Approximately nineteen months after the filing of the offer of judgment, the plaintiff, Skolnick and ProMutual executed the agreement to settle the case.[5] Under the agreement, ProMutual was to pay Skolnick's $1 million policy limit to the plaintiff in exchange for the plaintiff's

[4] There is nothing in the record to indicate whether the decision not to accept the offer was made by Skolnick or ProMutual or both of those defendants.

[5] There is a two month discrepancy, which is not material to the issues on appeal, between the date cited by the trial court as to when the agreement was executed and the various dates on which the parties signed the agreement. We rely on the date on which the last party to the agreement signed it, May 2, 2007, as the date of execution.

release of all claims against the defendants under the pending action except for a claim against ProMutual for offer of judgment interest. With respect to offer of judgment interest, the agreement provided in relevant part: "The [plaintiff] and [Skolnick and ProMutual] agree that the issue of whether or not [ProMutual is] obligated, under the terms of the policy of insurance that [ProMutual] issued to [Skolnick], for the payment of offer of judgment interest is an issue that needs to be decided by a court of law.

"The [plaintiff] and [Skolnick and ProMutual] have agreed to reserve to the court the question on offer of judgment interest as set forth . . . below in the interests of judicial efficiency, in order to avoid a full trial that the parties agree would result in a judgment of at least [$1 million] representing the underlying policy limits in this action. . . .

"[I]t is agreed that if the action were tried to conclusion, the [plaintiff] would become entitled to recover from [ProMutual] the sum certain of [$1 million] plus offer of judgment interest in the amount of $293,000.00. For all purposes under the prejudgment [interest] statute,[6] this [a]greement shall be considered to be a verdict and judgment in favor of the plaintiff, it being both parties' desire to promote a fair and efficient resolution of the prejudgment . . . interest issue without the time and expense to the parties and the judicial system of a long and protracted trial. . . .

"The question reserved to the court is whether, given that a valid offer of judgment was filed by the plaintiff in the amount of [$1 million], and assuming a verdict entered after trial of at least [$1 million] such that offer of judgment interest would be due on the [$1 million]

---

[6] Although the parties' agreement refers to the "prejudgment remedy statute," it is undisputed that this reference is to the offer of judgment statute, § 52-192a.

verdict, is [ProMutual] required to pay said offer of judgment interest where, as here, it exceeds the [$1 million] policy limits?"

The agreement further acknowledged that, if the court ruled in the plaintiff's favor, such a decision would obligate ProMutual to pay $293,000 in offer of judgment interest, and, conversely, if the court ruled in ProMutual's favor, such a decision would obligate the plaintiff to release all further claims against ProMutual beyond the $1 million policy payment. The agreement provided that in no event would Skolnick incur any obligation.

In accordance with their agreement, the plaintiff thereafter filed a motion to cite in ProMutual as a party defendant, which the court, *Karazin, J.*, granted. The plaintiff concurrently filed an amended complaint, along with a copy of the agreement, in which he added to his original medical malpractice count against Skolnick a count against ProMutual for a declaratory judgment as to the question reserved in the agreement regarding offer of judgment interest. ProMutual thereafter filed an answer and asserted as a special defense that it was not liable for offer of judgment interest because the policy defines damages to include prejudgment interest[7] and its agreement to pay the $1 million policy limit had exhausted its obligation under the pol-

---

[7] Section IX (3) of the policy provides: "DAMAGES means all monetary sums which the INSURED is legally obligated to pay as damages including judgments, awards and settlements entered into with OUR prior written consent. DAMAGES also includes pre-judgment interest awarded against an INSURED.

"DAMAGES does not include CLAIM EXPENSES, fines, penalties or taxes, punitive, exemplary, doubled, trebled or multiplied DAMAGES, or the refund, restitution or disgorgement of sums paid to or earned by the INSURED."

We note that the parties are in agreement, for purposes of this appeal, that this provision unambiguously bars payment of offer of judgment interest to the extent that such interest would bring the total payment under the policy above the $1 million policy limit. Therefore, their dispute centers not on what this provision means but rather on whether its enforcement is barred by § 52-192a when payment would be in excess of the policy limit.

icy. ProMutual subsequently filed a motion for summary judgment on the declaratory judgment count, and the plaintiff simultaneously filed a motion for a declaratory ruling.

After argument on the motions, the trial court, *J. R. Downey, J.*, issued a memorandum of decision addressing both motions, making dispositive determinations in favor of ProMutual, but on a different ground than the one raised by the parties. Specifically, the court pointed to the fact that § 52-192a permits an award of offer of judgment interest only " '[a]fter trial' . . . ." The court therefore reasoned that, because the matter had been settled *before* trial by way of a settlement, § 52-192a did not authorize offer of judgment interest. Although the court recognized that the parties had sought a determination as to the effect of the policy limit on offer of judgment interest, the court concluded that its construction of the statute rendered that determination unnecessary. The parties thereafter unsuccessfully invoked several procedural mechanisms in an attempt to obtain a ruling on the issue not addressed by the trial court. First, the parties filed a joint motion for reargument, specifically directing the trial court to the language in the agreement wherein the parties had stipulated that the agreement was to be treated as a verdict and judgment for purposes of the motions before the court. Judge Downey granted the motion for reargument, but denied the relief requested. Next, after the plaintiff had appealed from the trial court's judgment, ProMutual filed a motion for articulation in the trial court as to the following question: "Are insurance companies and policyholders free to enter into liability insurance contracts that limit the amount the insurer must pay as damages on behalf of the policyholder, including any prejudgment interest that may be assessed against the policyholder?" Judge Downey thereafter issued an articulation stating that he had considered, but not decided, the hypothetical question

posed because "the necessary predicate, a trial, had not occurred." The court further explained that reaching this question would have been rendering an advisory opinion, which courts are not inclined to do.

On appeal to this court; see footnote 2 of this opinion; the plaintiff contends, and ProMutual agrees, that the trial court improperly declined to answer the question that the parties had presented to it because that question properly was before the court and did not require it to render an advisory opinion. With respect to the merits of this question, the plaintiff contends that the policy provision defining the limit on damages to include prejudgment interest cannot be given effect because: (1) the offer of judgment statute is mandatory and punitive; and (2) the policy's definition of damages as including prejudgment interest is unenforceable because it is an attempt to circumvent the legislative directive under § 52-192a and the policy's characterization cannot change the actual nature of the interest. As to its view of the merits, ProMutual contends that it cannot be obligated to pay offer of judgment interest because, under the unambiguous terms of Skolnick's policy, it had paid the policy limit to the plaintiff and public policy does not weigh in favor of superseding such unambiguous contract language. We affirm the trial court's decision.

I

Our analysis begins with the question of whether the trial court properly based its decision on the dictates of § 52-192a or whether, as the parties claim, the trial court's decision should have been determined solely by the effect of the policy's limit on damages.[8] The parties

[8] Although we generally would begin with the question of whether the declaratory judgment count sought an advisory opinion, our resolution of the question of whether the trial court properly based its decision on the requirements of § 52-192a makes evident why the declaratory judgment count did not call on the court to issue an advisory opinion. See part II of this opinion.

contend that this issue properly was before the court in light of the express terms of their agreement that: (1) the agreement would constitute a verdict and judgment in the plaintiff's favor for all purposes of the offer of judgment statute; and (2) the plaintiff was entitled to interest under that statute. Therefore, they contend that the *only* issue properly before the court was whether ProMutual is obligated to pay offer of judgment interest when that interest, coupled with the $1 million settlement, would exceed the policy limit on damages. The parties also contend that, because a decision on the issue presented would have resulted in the payment or nonpayment of interest, the trial court improperly concluded that a decision on this question would have been merely advisory. In support of all of these contentions, ProMutual specifically contends that the trial court mistakenly treated the claim as one for an award of interest under § 52-192a, rather than a claim for a declaratory judgment under General Statutes § 52-29[9] regarding a policy coverage dispute.[10]

[9] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

[10] We note that ProMutual also asserts that the trial court improperly concluded that it lacked subject matter jurisdiction. We do not address this claim because the trial court did not conclude that it lacked jurisdiction, but, rather, that it lacked *authority* under § 52-192a to award offer of judgment interest because the statutory predicate of a trial had not occurred. See *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 790, 855 A.2d 174 (2004) ("Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . Whereas [s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it . . . the authority to act refers to the way in which that power [to hear and to determine the controversy] must be exercised in order to comply with the terms of the statute." [Citations omitted; internal quotation marks omitted.]). Undoubtedly, the trial court had jurisdiction to consider a declaratory judgment count brought pursuant to § 52-29.

We note that, because the parties' claim centers on whether the trial court applied the proper legal standard, our review is plenary. *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 32, 946 A.2d 839 (2008); *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002). Upon such review, we conclude that the trial court properly declined to decide whether the policy limitation on damages barred payment of offer of judgment interest because it properly concluded that a necessary predicate to reaching this question had not been satisfied.

We first point out that, although the parties have attempted to characterize their dispute as arising wholly out of contract—the agreement and the policy—the terms of the parties' agreement and their respective positions regarding the declaratory judgment action belie that characterization. The agreement provides in relevant part: "*For all purposes under the prejudgment [interest] statute*, this [a]greement shall be considered to be a verdict and judgment in favor of the plaintiff, it being both parties' desire to promote a fair and efficient resolution of the prejudgment . . . interest issue without the time and expense to the parties and the judicial system of a long and protracted trial." (Emphasis added.) The agreement expressly instructed the trial court to "*assum*[e] *a verdict was entered after trial* of at least [$1 million] such that offer of judgment interest would be due on the [$1 million] verdict . . . ." (Emphasis added.) In the first statement, the parties acknowledge that § 52-192a is the source of the obligation of offer of judgment interest.[11] In both statements, the parties implicitly acknowledge that the plaintiff would not be entitled to interest unless he had satisfied a predicate to recovery under that statute, namely, a

---

[11] Indeed, the amount of interest is fixed in the agreement by reference to the percentage mandated by § 52-192a.

trial upon which judgment was rendered in the plaintiff's favor.

The nature of the disagreement between the parties as to the question raised in the declaratory judgment count further underscores that § 52-192a was the necessary starting point for the trial court's analysis. The parties did not dispute the meaning of the policy. Rather, their dispute centered on whether it would be consistent with the legislature's intent in enacting § 52-192a to give effect to a contract provision that unambiguously defined its limitation on damages to include prejudgment interest. See footnote 8 of this opinion. Specifically, the plaintiff focused on the mandatory nature and punitive intent of the statute and contended that the policy's characterization of such interest as damages could not change the essential nature of the interest. Thus, it is clear that § 52-192a is the source of the obligation that the plaintiff invokes and that ProMutual seeks to avoid in this case. Therefore, despite their attempt to characterize the issue before the trial court as one arising solely out of contract, the record is to the contrary.

It also is evident that, by deeming their agreement tantamount to a judgment in the plaintiff's favor and directing the court to assume as much, the parties proceeded from the presumption that the requirements of § 52-192a had been met, such that the only question left to the court was whether the policy limit could bar the award of § 52-192a interest. The mere fact, however, that parties assume that a necessary predicate to their claim has been satisfied does not preclude the court from considering that predicate issue. See, e.g., *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 403–404, 944 A.2d 925 (2008) (addressing question of whether provision of Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., imposes same duty on employers to provide reasonable accommoda-

tion to disabled individuals that is required under federal Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., despite fact that parties were in agreement for purposes of appeal that same duty applied, "[b]ecause this question is an essential predicate to our analysis of the plaintiff's claim in the present case"); *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 33, 792 A.2d 835 (2002) (deciding that, before court could reach issue raised as to whether attorney's fees fell within *exclusion* to General Statutes § 31-303, statute assessing interest on late payments due under workers' compensation award, it must decide threshold issue as to whether such fees constituted " 'payment due under an award' " under that statute, which was issue that neither party had disputed); *State* v. *Miranda*, 245 Conn. 209, 214–15, 715 A.2d 680 (1998) ("[b]efore addressing the certified issue of whether the facts and circumstances of this case were sufficient to create a legal duty to protect the victim from parental abuse pursuant to [General Statutes] § 53a-59 [a] [3], we turn our attention to the question of whether, even if we assume such a duty exists, the failure to act can create liability under that statute"), rev'd, 274 Conn. 727, 878 A.2d 1118 (2005); see also *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 331–32, 968 A.2d 396 (2009) (addressing predicate assumption before addressing plaintiffs' ultimate claim on appeal). Therefore, the trial court properly considered the predicate issue of whether a settlement agreement deemed by the parties to be a verdict and judgment in the plaintiff's favor for purposes of § 52-192a could invoke the court's authority under that statute prior to addressing the parties' dependent claim as to whether the policy limit barred offer of judgment interest under § 52-192a.[12] See

---

[12] We disagree with the parties' view, however well-intentioned, that it is proper for parties to stipulate to facts that are false in order to bring their conduct within the ambit of a statute and in turn obtain a declaratory judgment that rests on those facts. The declaratory judgment claim and the parties' agreement concede that they are asking the court to assume facts

*Bania* v. *New Hartford*, 138 Conn. 172, 175, 83 A.2d 165 (1951) ("in an action for a declaratory judgment we are not limited by the issues joined or by the claims of counsel").

Accordingly, we turn to the merits of the trial court's decision, which turns on the proper construction of § 52-192a. Well settled rules guide our inquiry. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ."[13] (Internal quotation marks omitted.) *Donahue* v. *Veridiem, Inc.*, 291 Conn. 537, 547, 970 A.2d 630 (2009).

General Statutes (Rev. to 2005) § 52-192a (b) provides in relevant part: "*After trial* the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the

that the court knows not only have not happened, but that never can happen by virtue of their choice to enter into the settlement agreement.

[13] We note that neither party contends that the term trial is ambiguous, nor have they implicitly made such an argument by bringing any legislative history to the court's attention that would indicate an intent to include settlements in that term.

sum certain specified in the plaintiff's 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ." (Emphasis added.) As this language makes clear, the trial court is authorized to award offer of judgment interest only after a trial. A settlement clearly is not a trial. Indeed, "[w]hen parties agree to settle a case, they are effectively contracting for the right to *avoid* a trial." (Emphasis in original.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs*, 225 Conn. 804, 812, 626 A.2d 729 (1993). A settlement bears none of "the distinctive hallmarks of a trial." *Nunno* v. *Wixner*, 257 Conn. 671, 679, 778 A.2d 145 (2001); see id., 678–82 (concluding that award rendered pursuant to court mandated arbitration proceeding does not constitute trial within meaning of § 52-192a and explaining substantive and procedural distinctions between proceedings). A trial and a settlement achieve different purposes and have different legal consequences. See *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 168, 681 A.2d 293 (1996) ("[w]hen an award is made pursuant to a settlement . . . the underlying issues have not been fully and fairly litigated, and, therefore, the earlier award can have no preclusive effect on a subsequent action"); *Hill* v. *State Employees Retirement Commission*, 83 Conn. App. 599, 613, 851 A.2d 320 ("[a]n issue that has been resolved by virtue of a settlement agreement has not actually been litigated"), cert. denied, 271 Conn. 909, 859 A.2d 561 (2004); see also *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986) ("[i]n determining the details of relief [pursuant to a settlement agreement], the judge may not award whatever relief would have been appropriate after an adjudication on the merits, but only those precise forms of relief that are either agreed to by the parties . . . or fairly implied by their agreement" [citations omitted]). Indeed, as in the present case, in a settlement, the defen-

dant may deny or refuse to concede the factual predicate for liability.

Although we have no doubt that the parties were acting in good faith to resolve the matter expeditiously and properly, just as "putting a contract tag on a tort claim will not change its essential character"; *Gazo* v. *Stamford*, 255 Conn. 245, 263, 765 A.2d 505 (2001); calling a settlement a verdict after trial does not make it so. See also id. ("[p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender" [internal quotation marks omitted]). Therefore, the legislative grant of authority to the courts in § 52-192a to award offer of judgment interest "[a]fter trial" reasonably cannot be construed to mean "after a settlement," even if the parties agree to treat the settlement as a verdict and judgment in the plaintiff's favor. The plaintiff in the present case sought an order from the court requiring ProMutual to pay offer of judgment interest. Although the parties could have agreed as part of their *settlement* to the payment or nonpayment of offer of judgment interest, they have provided no case law, and we are aware of none, that holds that a court may award relief conferred solely by statute under terms that are inconsistent with those under which the legislature conferred such authority. See *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 790, 855 A.2d 174 (2004) ("authority to act refers to the way in which that power [to hear and to determine the controversy] must be exercised in order to comply with the terms of the statute" [internal quotation marks omitted]).

We are mindful that the stated purpose of the parties' settlement is consistent with the purpose of the offer of judgment statute, which is "to encourage pretrial settlements and, consequently, to conserve judicial resources." (Internal quotation marks omitted.) *Stiffler*

v. *Continental Ins. Co.*, 288 Conn. 38, 43, 950 A.2d 1270 (2008). The statute also, however, is intended to provide an incentive to accept a reasonable offer of judgment within thirty days after the offer is made. In the present case, the defendants continued to litigate this issue for nineteen months after the offer of judgment was made for the same amount agreed to upon settlement, the policy limit. Nonetheless, even if the position advanced by the parties was entirely consistent with the policy underlying the statute, "[w]here there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." *Burnham* v. *Administrator, Unemployment Compensation Act*, 184 Conn. 317, 325, 439 A.2d 1008 (1981); accord *Hotarek* v. *Benson*, 211 Conn. 121, 129, 557 A.2d 1259 (1989) ("[t]he statutes cannot be changed by the court to make them conform to the court's conception of right and justice in a particular case"); *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.*, 207 Conn. 639, 645, 541 A.2d 869 (1988) ("We are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained. . . . Nor can we engraft language not clearly intended by its enactment onto legislation." [Citation omitted; internal quotation marks omitted.]). If the legislature concludes that it is consistent with the purpose of the offer of judgment statute to allow parties to stipulate to treating their settlement as a judgment in the plaintiff's favor for purposes of that statute, it has the sole authority to add such language to the statute. "It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006).

## II

The parties also claim that the trial court improperly concluded that a decision on the issue presented as to the effect of the policy limit would be an improper advisory opinion. Our analysis in part I of this opinion demonstrates that the court properly declined to address the question as framed in the declaratory judgment count, not because to do so would have been to render an advisory opinion, but because a necessary predicate to reaching the issue raised had not been met. See, e.g., *State* v. *Mullins*, 288 Conn. 345, 377, 952 A.2d 784 (2008) (concluding that, because defendant did not establish necessary predicate to application of particular test, trial court properly declined to apply test); *Gelinas* v. *West Hartford*, 225 Conn. 575, 587, 626 A.2d 259 (1993) (concluding that, because plaintiffs' site plan application did not comply with zoning statutes' requirements, which was necessary predicate to claimed entitlement to writ of mandamus, court need not consider whether defendants had mandatory duty under statutes that warranted extraordinary remedy of mandamus relief).

The issue as framed by ProMutual in its motion for articulation, however, called on the trial court to render an advisory opinion. For purposes of raising an alternate ground for affirmance, ProMutual sought a broad declaration as to whether "insurance companies and policyholders [are] free to enter into liability insurance contracts that limit the amount the insurer must pay as damages on behalf of the policyholder, including any prejudgment interest that may be assessed against the policyholder . . . ."[14] In light of the trial court's deter-

---

[14] The declaratory judgment count referred to the facts of the case specifically and provided: "The question reserved to the court is whether, given that a valid offer of judgment was filed by the plaintiff in the amount of [$1 million], and assuming a verdict was entered after trial of at least [$1 million] such that offer of judgment interest would be due on the [$1 million] verdict, is [ProMutual] required to pay said offer of judgment interest where, as here, it exceeds the [$1 million] policy limits?"

mination that prejudgment interest could not be awarded under § 52-192a under the facts of the present case, the answer to such a question could not have determined any rights or obligations of the parties. Thus, as framed, ProMutual impermissibly "sought a declaratory judgment, not to settle a present controversy, but rather to avoid one in the future." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 629, 822 A.2d 196 (2003). Indeed, at oral argument before this court, ProMutual acknowledged that it actually was seeking a "black letter" ruling, applicable to all insurance companies and policyholders. Such a determination, however, is too abstract to be determined properly by a court. See *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 625–26 ("declaratory judgment procedure may not be utilized merely to secure advice on the law . . . or to establish abstract principles of law [citation omitted; internal quotation marks omitted]"); see also *Singh* v. *Singh*, 213 Conn. 637, 654, 569 A.2d 1112 (1990) ("[l]aw suits are not determined by a consideration of philosophy in the abstract, but by the application of legal principles to the facts of a particular case" [internal quotation marks omitted]). Numerous considerations might bear on such an issue, none of which are evident in this record and none of which necessarily would be uniform in every case, such as, for example, whether, for a greater premium, the policyholder had the ability to purchase a policy that would not bar such interest, whether the policyholder precluded the insurer from accepting the offer of judgment or whether the insurer acted in bad faith in declining to accept an offer of judgment. Therefore, we conclude that the trial court properly declined to grant the plaintiff's request for a declaratory judgment on the ground that the predicates for an award of offer of judgment interest under § 52-192a had not been met.

The decision is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, VERTEFEUILLE, ZARELLA and McLACHLAN, Js., concurred.

PALMER, J., dissenting. I disagree with the majority that the trial court properly declined to consider the issue raised by the named plaintiff, Richard Costantino,[1] in his request for a declaratory judgment pursuant to General Statutes § 52-29 (a),[2] concerning the liability of the defendant Medical Professional Mutual Insurance Company (ProMutual),[3] for offer of judgment interest under General Statutes (Rev. to 2005) § 52-192a[4] in an amount in excess of the limits of the medical malpractice insurance policy issued by ProMutual to its insured, the named defendant, Stanley Skolnick.[5] In support of its conclusion, the majority asserts that, because § 52-192a applies only to cases that have proceeded to trial, and because the present case was not tried, the trial court lacked the authority under § 52-192a to decide the issue posed by the plaintiff's declaratory judgment action. The majority reaches this erroneous conclusion because it confuses the authority of a trial court generally to order an award of such interest under § 52-192a,

[1] Richard Costantino's wife, Melissa Costantino, also was named as a plaintiff in the original complaint but no longer is a party to this action. In the interest of simplicity, I refer to Richard Costantino as the plaintiff throughout this opinion.

[2] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

[3] This defendant's full name is Medical Professional Mutual Insurance Company doing business as ProMutual and ProSelect Insurance Company.

[4] See footnote 3 of the majority opinion for the relevant text of General Statutes (Rev. to 2005) § 52-192a. All references in this opinion to § 52-192a are to the 2005 revision.

[5] Darien Medical Group, Skolnick's medical practice, also was named as a defendant.

on the one hand, and the authority of the court *in the present case to render a declaratory judgment under § 52-29 (a)*, on the basis of the facts and representations contained in the parties' stipulation. In my view, it is clear that, under well established precedent governing requests for declaratory judgments, the trial court was required, first, to accept the parties' factual stipulation and, second, to render a decision in accordance with that stipulation on the plaintiff's request for a declaratory judgment. As a general matter, only if a dispute is nonjusticiable is a court permitted to decline to render a decision. The majority's contrary conclusion ignores the fact that, in the present case, the plaintiff is not seeking to have the court invoke its authority under § 52-192a to make an award of offer of judgment interest; rather, the plaintiff is asking the court to enforce the terms of the parties' stipulation, which *itself* authorizes the award of such interest if, as the plaintiff claims, ProMutual lawfully cannot shield itself contractually from paying that interest. Unfortunately, the failure of the trial court and the majority to address the issue posed by the parties deprives the plaintiff of his right to a judicial resolution of his claim that ProMutual is obligated to pay him $293,000 in offer of judgment interest under the parties' stipulation. I therefore respectfully dissent.

The facts, which are set forth in the majority opinion, are undisputed and straightforward, and need not be repeated in detail here. It is sufficient merely to underscore that the plaintiff filed an offer of judgment in the amount of $1 million, and approximately nineteen months later,[6] the plaintiff settled his malpractice claim against Skolnick for the $1 million limit of the ProMutual insurance policy. The plaintiff, however, did not wish to give up his claim against ProMutual for offer of judgment interest in the amount of $293,000. Thus,

---

[6] See footnote 5 of the majority opinion and accompanying text.

the issue of whether ProMutual would have been liable for such interest if the case had been tried to conclusion remained in dispute between the parties. For the purpose of providing a vehicle for the resolution of that dispute, the plaintiff, without objection from ProMutual, amended his complaint to include a count seeking a judgment declaring that ProMutual was liable for such interest, over and above the policy limits, despite language in the policy to the contrary. To facilitate the court's resolution of the plaintiff's claim, the parties jointly agreed, by way of a stipulation, to treat the case as if it had proceeded to trial, with the plaintiff receiving an award of at least $1 million. Finally, the parties agreed to be bound by the court's decision as to whether ProMutual was liable for interest in accordance with the parties' stipulation.[7]

Despite the parties' joint request for a judicial resolution of their dispute, the trial court declined to decide the issue raised by the plaintiff's request for declaratory relief. Specifically, the court stated that, "[a]s clearly stated in [§ 52-192a (c)], the awarding of [offer of judgment] interest only occurs 'after trial' . . . . No trial occurred in this case. Therefore, the court may not award interest per statute." (Citation omitted.) The court thereafter rendered judgment for ProMutual on the plaintiff's claim for declaratory relief.

---

[7] The parties framed the issue to be decided as follows: "[G]iven that a valid offer of judgment was filed by the plaintiff in the amount of [$1 million], and assuming a verdict entered after trial of at least [$1 million] such that offer of judgment interest would be due on the [$1 million] verdict, is . . . ProMutual . . . required to pay said offer of judgment interest where, as here, it exceeds the [$1 million] policy limits?" In addition to seeking an answer to the foregoing reserved question, the plaintiff, in the declaratory judgment count of his complaint, sought certain relief to which he necessarily would be entitled in the event that the court ruled in his favor on that count. Specifically, the plaintiff sought "[a] declaration that [ProMutual is] required to pay prejudgment interest above the policy limits of liability" and "[a]n order requiring [ProMutual] to pay said prejudgment interest in the amount agreed to by the parties following a ruling that [ProMutual is] required to pay prejudgment interest above the policy limits . . . ."

In a joint motion to reargue, the parties explained that they "simply [were] asking the court to decide an issue of law based [on] agreement that all conditions for operation of the prejudgment remedy statute have . . . been met, including that there was a verdict [after trial] exceeding the offer of judgment amount." The parties further maintained that the court's refusal to decide the issue would frustrate the parties' settlement agreement and thwart the remedial purpose of the declaratory judgment statute because a decision on the question would have resolved "a bona fide and substantial issue in dispute between [them]" and rendered a trial on the merits of the plaintiff's malpractice claim unnecessary. It was the parties' contention that, by settling the plaintiff's malpractice claim against Skolnick, the parties had sought to conserve not only their own resources but also those of the court. If the case had proceeded to trial, they maintained, the plaintiff likely would have obtained a judgment that exceeded the policy limits, and the issue of whether ProMutual was responsible for the payment of the offer of judgment interest, to which the plaintiff was statutorily entitled, necessarily would have been litigated at that time. The trial court granted the parties' motion for reargument but denied the relief sought therein.

As the majority has explained, on appeal to this court, the parties claim that, in light of their stipulation, "the *only* issue properly before the [trial] court was whether ProMutual is obligated to pay offer of judgment interest when that interest, coupled with the $1 million settlement, would exceed the policy limit on damages. . . . In support of . . . [this contention], ProMutual specifically contends that the trial court mistakenly treated the claim as one for an award of interest under § 52-192a, rather than a claim for a declaratory judgment under [§ 52-29 (a)] regarding a policy coverage dispute." (Emphasis in original.) The majority rejects the parties'

claim, concluding that the trial court properly declined to render a decision on the issue raised in connection with the plaintiff's request for a declaratory judgment. Although the majority acknowledges that the trial court had jurisdiction over the plaintiff's request, the majority concludes that the court was not bound by the parties' agreement to treat the case as if it had proceeded to trial. The majority further concludes that, because the case had not been tried, and because § 52-192a applies only to cases that result in a trial, the court properly determined that it lacked authority to award offer of interest judgment under § 52-192a.

I fully agree with the majority that the trial court had jurisdiction to render a decision on the declaratory judgment count of the plaintiff's complaint. I disagree with the majority, however, that the trial court properly declined to do so because it lacked authority under § 52-192a to award offer of judgment interest. The majority reaches the wrong conclusion because it views the issue raised by this appeal through the wrong lens; instead of determining whether, in light of the parties' stipulation, the trial court has the authority *under § 52-29 (a)* to render a declaratory judgment resolving the parties' dispute, the majority treats the issue as implicating the court's authority to award offer of judgment interest under § 52-192a. Even if it is assumed that the majority is correct in concluding that § 52-192a applies only after a trial has occurred, there simply is no justification for the trial court to have rejected the stipulation filed by the parties for the purpose of obtaining a judgment declaring their rights in accordance with § 52-29 (a). Because the parties agreed both to treat the case as if it had proceeded to trial and to be bound by the trial court's resolution of the issue raised by the plaintiff's request for a declaratory judgment, the court clearly has the authority to answer the question reserved to it and, if the court agrees with the plaintiff's claim, to

render a decision *in accordance with the parties' stipulation* that ProMutual is obligated to pay offer of judgment interest to the plaintiff. In other words, although the trial court in the present case would have lacked the authority to award offer of judgment interest *solely on the basis of § 52-192a*—this is so because no trial actually took place, and the court's authority to make an award under § 52-192a is limited to cases in which a trial has occurred—the decision that the plaintiff seeks is not predicated on § 52-192a but, rather, on the parties' stipulation. Because the trial court had the authority to render a decision on the plaintiff's request for a declaratory judgment on the basis of the parties' stipulation, the trial court properly could not refuse to consider the plaintiff's declaratory relief claim for lack of such authority. As I explain hereinafter, only if the issue presented were nonjusticiable would the court have been free to decline to resolve the merits of the plaintiff's claim. That is not the case here, however.

"The principles that underlie justiciability are well established. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Nielsen* v. *State*, 236 Conn. 1, 6–7, 670 A.2d 1288 (1996). "In deciding whether the plaintiff's complaint presents a justiciable claim, we make no determination regarding its merits. Rather, we consider only whether the matter in controversy [is] capable of being adjudicated by judicial power according to the aforestated well established principles." (Internal quotation marks omitted.) *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 626, 822 A.2d 196 (2003).

The plaintiff sought to invoke the trial court's jurisdiction over his claim for declaratory relief "pursuant to § 52-29, which, as we have recognized, provides a valuable tool by which litigants may resolve uncertainty of legal obligations. . . . The [declaratory judgment] procedure has the distinct advantage of affording to the court in granting any relief consequential to its determination of rights the opportunity of tailoring that relief to the particular circumstances. . . . A declaratory judgment action is not, however, a procedural panacea for use on all occasions, but, rather, is limited to solving justiciable controversies. . . . Invoking § 52-29 does not create jurisdiction where it would not otherwise exist. *Wilson* v. *Kelley*, 224 Conn. 110, 116, 617 A.2d 433 (1992) (Implicit in [§ 52-29 and Practice Book § 17-54] is the notion that a declaratory judgment must rest on some cause of action that would be cognizable in a nondeclaratory suit. . . . To hold otherwise would convert our declaratory judgment statute and rules into a convenient route for procuring an advisory opinion on moot or abstract questions . . . and would mean that the declaratory judgment statute and rules created substantive rights that [do] not otherwise exist. . . .).

"As we noted in *Pamela B.* v. *Ment*, 244 Conn. 296, 323–24, 709 A.2d 1089 (1998), [w]hile the declaratory judgment procedure may not be utilized merely to secure advice on the law . . . or to establish abstract principles of law . . . or to secure the construction of a statute if the effect of that construction will not affect a plaintiff's personal rights . . . it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof. . . . Finally, the determina-

tion of the controversy must be capable of resulting in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 625–26.

Applying these principles to the present case, I conclude that the declaratory judgment count of the plaintiff's complaint meets all of the criteria of the justiciability doctrine. First, the parties' interests were adverse. Second, an actual bona fide and substantial question over the effect of § 52-192a on ProMutual's obligations under the insurance policy prohibited the parties from reaching a final settlement of the plaintiff's claims against Skolnick. Third, a determination of the controversy in the plaintiff's favor would afford him practical relief because it would entitle him to an additional $293,000 above and beyond the $1 million that he already was entitled to receive under the terms of the settlement agreement. Moreover, the fact that the parties have entered into a partial settlement does not render the case nonjusticiable. Indeed, in that respect, this case is identical to *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 942 A.2d 334 (2008), a declaratory judgment action in which this court recently was required to determine, after a partial settlement had been reached between the parties, the extent of coverage under a medical malpractice insurance policy. Id., 3–4 and n.3; see also, e.g., *Guin* v. *Ha*, 591 P.2d 1281, 1282–83 (Alaska 1979) (plaintiff in medical malpractice action settled all claims against defendant physician, expressly reserving issue of insurer's liability for prejudgment interest in excess of policy limits, and, thereafter, parties filed stipulation reciting terms of settlement and request for declaration by court as to whether insurer was liable for prejudgment interest).

Indeed, the majority acknowledges that the question reserved to the trial court is a justiciable one. As I have indicated, however, the majority asserts that "the trial

court properly considered the predicate issue of whether a settlement agreement deemed by the parties to be a verdict and judgment in the plaintiff's favor for purposes of § 52-192a could invoke the court's authority under that statute prior to addressing the parties' dependent claim as to whether the policy limit barred offer of judgment interest under § 52-192a." The majority further concludes that "the parties' stipulations did not satisfy the necessary predicate to an award of offer of judgment interest under § 52-192a, namely, a judgment in the plaintiff's favor after a trial."

The majority cites to no authority, and I have found none, in which a court assumed jurisdiction over a declaratory judgment action, declined to answer the question presented therein, and then rendered judgment in favor of one of the parties on a claim that no party had raised. The majority argues, however, that the trial court in the present case properly did just that because a predicate event to an award of interest under § 52-192a, namely, a trial, had not occurred. Not one of the cases that the majority cites, however, supports the proposition that parties may not stipulate to facts— even essential predicate facts underlying a claimed entitlement—in the context of a *declaratory judgment action.* Indeed, not one of the cases on which the majority relies involves a claim for declaratory relief. The first such case, *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 403–404, 944 A.2d 925 (2008), simply stands for the proposition that, on appeal, parties may not bind the court with respect to the applicable *law.* The remaining cases that the majority cites also provide no support for its conclusion; they merely articulate the general rule that courts often must decide predicate *legal issues* before reaching the ultimate issue in a case. See *Sastrom* v. *Psychiatric Security Review Board,* 291 Conn. 307, 319–20 n.15, 968 A.2d 396 (2009); *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 33, 792 A.2d

835 (2002); *State* v. *Miranda,* 245 Conn. 209, 214–15, 715 A.2d 680 (1998), rev'd on other grounds, 274 Conn. 727, 878 A.2d 1118 (2005). None of these cases, however, supports the conclusion that parties may be barred from stipulating to predicate *facts* in a declaratory judgment action. Thus, none of the foregoing cases supports the majority's determination that, because a trial court is not authorized to award offer of judgment interest in the absence of a trial, the trial court in the present case lacked the authority *under § 52-29 (a)* to determine the effect of § 52-192a on the parties' respective rights and obligations under Skolnick's malpractice insurance contract.

In fact, the only declaratory judgment case that is even mentioned in the majority opinion, namely, *Bania* v. *New Hartford,* 138 Conn. 172, 83 A.2d 165 (1951), manifestly does not support the proposition that parties may be prohibited from presenting their case to the court via a stipulation of facts. To the contrary, *Bania* itself, like most declaratory judgment actions, was submitted to the trial court upon a stipulation of facts. Id., 173. The majority, however, takes language from *Bania* out of context and then uses that language to support its conclusion that the trial court in the present case properly declined to answer the question presented to it. Specifically, the majority cites *Bania* for the principle that, "in an action for a declaratory judgment we are not limited by the issues joined or by the claims of counsel." Id., 175. In *Bania,* however, this court relied on the foregoing principle as a basis for *deciding* the issue on which the plaintiff in that case had requested a declaratory judgment, even though certain predicate facts necessary to support the plaintiff's claim were not apparent in the record. See id., 175–76. Specifically, the court stated: "While the questions presented to the trial court under the plaintiff's claim for a declaratory judgment lack the clarity . . . which is desirable [when]

such a judgment is sought, they suffice to warrant our passing [on] the fundamental and controlling inquiry . . . ." Id. We reached this determination in *Bania* because, as we further explained, "[a]n action for a declaratory judgment is a special statutory proceeding . . . implemented by the rules [of practice] . . . . The relief thus afforded *is highly remedial and the statute and rules should be accorded a liberal construction to carry out the purpose underlying such judgments.* . . . The object of the action is to secure an adjudication of rights which are uncertain or in dispute. . . . The complaint must allege such uncertainty or dispute and set forth the facts necessary for the determination of the question. It must also contain facts sufficient to show that the question is not moot and that the plaintiff is a proper party. However, in an action for a declaratory judgment we are not limited by the issues joined or by the claims of counsel. . . . Under [the rules of practice], a prerequisite to resort to the action is that there must be an issue in dispute or an uncertainty of legal relations which requires settlement between the parties. *This . . . means no more than that there must appear a sufficient practical need for the determination of the matter, and that need must be determined in the light of the particular circumstances involved in each case.*" (Citations omitted; emphasis added.) Id., 175.

In the present case, the practical need for a determination of the question presented to the trial court stemmed from the parties' desire, on the eve of trial, to reach an equitable and fair settlement of the plaintiff's claims against Skolnick, which they were unable to accomplish completely because of a dispute over whether ProMutual would be obligated to pay the offer of judgment interest if the case proceeded to trial and, as the parties anticipated, the plaintiff obtained a verdict in excess of his offer of judgment. Thus, the parties

stipulated to the fact that, if the case had been tried to conclusion, the plaintiff would have received a damages award of at least $1 million, thereby entitling him to offer of judgment interest in the amount of $293,000.

Finally, I am aware of no reason why the parties were not entitled to treat the case as if it were one that had proceeded to trial by entering into a stipulation to that effect. Unless such an agreement operates as a fraud on the court, purports to create a controversy when none actually exists, violates public policy or otherwise is improper,[8] there simply was no basis for the court to reject the parties' agreement. Aside from the majority's reliance on the unexceptional proposition that a court is not bound to abide by the parties' agreement on the *law*—a principle that also has no applicability to the present case—the majority makes no attempt to explain why the court was entitled to refuse to decide the issue presented in accordance with the parties' stipulation. As the majority itself has explained, the parties settled their case in good faith, seeking to save the court and themselves the inconvenience of a lengthy trial, and they agreed to the likely outcome of any such trial. Moreover, by signing the stipulation, ProMutual effectively waived any objection that it otherwise would have been entitled to raise, because the case was resolved in advance of trial, with respect to an award of offer of judgment interest. Finally, as the majority concedes, the fact that no trial actually occurred is not a jurisdictional impediment to a resolution of the plaintiff's claim for a declaratory judgment. Thus, § 52-192a manifestly did *not* bar the court from rendering a decision, pursuant to § 52-29 (a), in accordance with and predicated on the parties' stipulation, concerning the question posed

---

[8] None of these concerns is applicable in the present case.

by the plaintiff's request for a declaratory judgment.[9] In sum, it is true that, ordinarily, when a plaintiff seeks offer of judgment interest under § 52-192a but no trial has occurred, the court lacks authority to award such interest because a condition precedent for that award has not been met. In the present case, however, the plaintiff filed an action for a declaratory judgment, and, for purposes of that action, the parties entered into a stipulation reflecting their agreement, first, to treat the case as one in which a trial had occurred and, second, to be bound by the court's decision concerning ProMutual's liability for offer of judgment interest. In such circumstances, the trial court clearly had the authority, under § 52-29 (a), to render a decision concerning Pro-Mutual's obligation to pay interest to the plaintiff because the plaintiff's declaratory judgment action, predicated as it is on the parties' stipulation, provides a perfectly proper vehicle for the court's resolution of

[9] The majority insists, nevertheless, that it is not "proper for parties to stipulate to facts that are false in order to bring their conduct within the ambit of a statute and in turn obtain a declaratory judgment that rests on those facts." Footnote 12 of the majority opinion. I do not agree. First, the majority cites no authority for its proposition, and I have found none. Moreover, if, as in the present case, the parties' dispute is a justiciable one and there is nothing about the parties' factual stipulation that violates public policy, I see no basis for the court to avoid deciding the dispute merely because the parties have agreed to certain facts solely for the purpose of invoking a particular statutory provision. This is so because the legal requirements of justiciability have proven to be perfectly adequate to root out controversies that are not genuine or for which no practical relief can be afforded. When, therefore, the requirements of justiciability are met, as the majority concedes they have been in the present case, I can think of no reason for this court to decline to render a decision on the merits.

Finally, even if the majority were correct that the trial court was not bound to accept the parties' factual stipulation, that does not also support the conclusion that the trial court *lacked the authority* to decide the issue presented by the plaintiff's claim for a declaratory judgment. Under the majority's reasoning, at the most, the stipulation would provide a basis for the court to have *elected* not to render a decision on that claim, presumably for prudential reasons. As I have explained, however, there is nothing about the stipulation that is against public policy or that otherwise would provide a basis for the court's refusal to resolve the parties' dispute.

the parties' dispute. Put differently, the court did not lack the authority to award offer of judgment interest to the plaintiff in light of the parties' stipulated agreement that the plaintiff *is, in fact, entitled to such interest* if the court concludes, upon consideration of the claims underlying the plaintiff's declaratory judgment action, that ProMutual is liable for that interest, over and above the $1 million policy limit, notwithstanding the policy language to the contrary.[10]

For the foregoing reasons, I would address and resolve the plaintiff's claim that he is entitled to recover $293,000 in offer of judgment interest from ProMutual. Accordingly, I dissent.

[10] It is worth noting that the result that the majority and the trial court reach verges on the bizarre because, under the majority's holding, if the plaintiff, with the agreement of the defendants, had proceeded to an exceedingly brief, one witness trial at which all parties agreed to a $1 million judgment in favor of the plaintiff, then the parties would have been entitled to a resolution of the question that the trial court and the majority decline to address. For the reasons set forth in this opinion, there simply is no reason why the parties were required to engage in the pretense of a trial merely to resolve their dispute over the offer of judgment issue. Indeed, the majority suggests that the plaintiff's request for a declaratory judgment is defective because, in the parties' settlement agreement, they "concede that they are asking the court to assume [a fact, namely, that a trial occurred] that the court knows not only [has] not happened, but that never can happen by virtue of their choice to enter into the settlement agreement." Footnote 12 of the majority opinion. I take issue with this assertion. There is nothing to prevent the parties from voiding their settlement agreement and proceeding to "trial"—an event that will take all of a few minutes—following which, under the majority opinion, they then will be entitled to a resolution of the issue presented by this appeal. Thus, contrary to the majority's contention, there is no reason why a trial cannot occur in the future. Requiring such a trial, however, results in a waste of time and resources because this court is fully authorized to resolve the parties' dispute in the context of the present appeal.