******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRIME LOCATIONS OF CT, LLC, ET AL. *v.* ROCKY
HILL DEVELOPMENT, LLC, ET AL.
(AC 37588)

DiPentima, C. J., and Alvord and West, Js.

*Argued February 16—officially released August 30, 2016*

(Appeal from Superior Court, judicial district of
Middlesex, Domnarski, J.)

*Daniel J. Krisch*, with whom was *Matthew S. Carlone*, for the appellants (defendant Luke DiMaria et al.).

*Christopher A. Klepps*, with whom were *Kevin J. McEleney*, and, on the brief, *Richard D. Carella*, for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, C. J. The defendants MPM Enterprises, LLC (MPM), and Luke DiMaria appeal from the judgment of the trial court rendered in favor of the plaintiffs, Prime Locations of CT, LLC (Prime Locations), Hasson Holdings, LLC (Hasson), SMS Realty, LLC (SMS), and C&G Holdings, LLC (C&G).[1] On appeal, the defendants argue that the court improperly (1) concluded that the plaintiffs had standing and (2) decided the case on a basis that was not pleaded, briefed or argued during the proceedings in the trial court. We agree with the defendants' second claim, and reverse the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. On September 27, 2004, Coles Brook Commerce Park Associates, LLC (Declarant), subdivided property located in the town of Cromwell into lots for the purpose of developing a business park. The Declarant also executed a declaration of easements, covenants and restrictions (declaration),[2] and incorporated the Coles Brook Commerce Park Owners Association, Inc. (Owners Association), for the purpose of maintaining, administering and enforcing the covenants and restrictions.

Section 3.2 of article 3 of the declaration provided that each owner of a lot would be a member of the Owners Association. Each owner received a vote that was directly proportional to its percentage of ownership in the common elements of the business park.[3] Article 5 of the declaration created a Design Review Committee, which, pursuant to § 6.2 of article 6, was responsible for determining if the final drawings and specifications for structures on any lot conformed with the restrictions contained in the declaration. Specifically, § 6.3 provided: "No use shall be permitted which is offensive by reason of odor, fumes, dust, smoke, noise or pollution, which is excessively hazardous by reason of excessive danger or fire or explosion, or which violates any law or ordinance."

DiMaria planned to build a crematorium on lot 2, which he had purchased from MPM in late September, 2012.[4] Members of the Owners Association were aware of DiMaria's plans to build a crematorium prior to his purchase of lot 2 from MPM. On August 29, 2012, the Design Review Committee met to consider DiMaria's plans.[5] It did not give its permission to build such a structure because it was not an approved use pursuant to § 6.3 of article 6 of the declaration.

On August 1, 2012, Rocky Hill Development, LLC (Rocky Hill Development), MPM, and Rescue One, LLC (Rescue One), respectively the owners of lots 1, 2, and 7, filed an amendment to the declaration on the Cromwell land records. This amendment purported to withdraw lots 1, 2, and 7 from the Owners Association on the

basis of their holding more than fifty percent of the votes of the Owners Association.[6]

On August 6, 2014, the plaintiffs commenced this action against the MPM, DiMaria, Rocky Hill Development, and Rescue One, seeking a declaratory judgment and injunctive relief in a three count complaint.[7] In count one of the complaint, the plaintiffs alleged that for a variety of reasons, the August 1, 2012 amendment did not effectively amend the declaration.[8] For relief, they sought, inter alia, a declaratory judgment that the amendment was void ab initio and unenforceable, that the original declaration remained in full force and effect and that lots 1, 2, and 7 remained part of the Owners Association and subject to the declaration. In count two, the plaintiffs argued, in the alternative, that if the amendment was valid, then the court issue a declaratory judgment stating that MPM, DiMaria, Rocky Hill Development, and Rescue One, not be permitted to use the common area easement or the drainage easement. In count three, directed only to MPM and DiMaria, the plaintiffs sought a temporary and permanent injunction prohibiting the construction of an unapproved building on lot 2. DiMaria argued that, as a result of the August 1, 2012 amendment withdrawing lot 2 from the Owner's Association, he did not need the approval of the Design Review Committee to build the crematorium on lot 2.

The court held an expedited trial on October 2, 2014. After hearing evidence and reviewing the posttrial briefs, the court issued its memorandum of decision on December 19, 2014. It observed that the dispositive issue was the validity and effect of the August 1, 2012 amendment. The court concluded that although the owners of lots 1, 2, and 7 had a 54.15 percent vote, the declaration did not contain any language that permitted an owner to withdraw a lot from the Owners Association. It set forth the following rationale to support its conclusion that the amendment was invalid: "First, the declaration specifically provides that its provisions run with the lots and are binding upon all Owners. Second, there is a lack of authority in the declaration to remove lots from the Coles Brook Commerce Park community and/or the [Owners] Association. . . . Third, the declaration contains an express provision that every owner shall be a member of the [Owners] Association. The amendment is invalid because it violates the express terms of the Declaration. . . . MPM, Rocky Hill [Development] and Rescue One were not permitted, under the declaration, to modify the declaration to withdraw their lots from the [Owners] Association and to renounce their status as Owners as defined by the declaration." (Citations omitted.)

The court then rejected some of the arguments that had been presented by the plaintiffs. Specifically, the court was not persuaded by the plaintiffs' contention that there had been an invalid vote because Rocky Hill

previously left the Owner's Association, and MPM and Rescue One alone lacked a majority vote. The court also concluded that, contrary to the plaintiffs' claim, Coles Brook Commerce Park was not subject to the Common Interest Ownership Act, General Statutes § 47-214 et seq.[9]

Turning to the issue of injunctive relief, the court noted that the declaration provided that approval of the Design Review Committee was required for the construction of buildings and that certain offensive uses were prohibited. "It is undisputed that DiMaria has not submitted the plans for the crematorium structure to the [Design Review Committee]. It is also undisputed that after the [Design Review Committee] became aware of the DiMaria's plans to build a crematorium, they held a meeting on August 29, 2012. At that meeting, the [Design Review Committee] declined to approve DiMaria's use of lot 2 as a crematorium because it violated § 6.3 of article 6 of the declaration. . . . The court also finds that DiMaria has violated the restrictive covenants by constructing a structure or building upon lot 2 without the approval of plans or proposed use from the [Design Review Committee]."

The court then issued the following orders: "The court enters a declaratory judgment that the amendment to the declaration . . . is invalid and of no force and effect. . . . The defendant . . . DiMaria and his agents, heirs and assigns are ordered to immediately cease any construction or development activity upon lot 2 . . . until such time as he/they have obtained approval of plans and permission for use from the Design Review Committee . . . ."

On January 5, 2015, the defendants filed a motion to reargue and for reconsideration of the December 19, 2014 decision. Specifically, the defendants claimed that the decision addressed issues outside of the scope of the pleadings and was contradictory to the allegations of the complaint and the evidence presented at trial. The court denied this motion on January 15, 2015. This appeal followed.

On January 26, 2015, the defendants moved to open the judgment and to dismiss the action for lack of subject matter jurisdiction. They argued that because the declaration limited authority to commence a civil action to enforce a violation of the declaration to the Declarant and the Owners Association, and neither of those entities was a party to the action, the plaintiffs lacked standing to enforce a claimed violation of the declaration.

On February 4, 2015, the plaintiffs filed an objection to the defendants' motion to dismiss. Specifically, they argued that the lot owners had standing to enforce the restrictions contained in the declaration and that the defendants' standing claim was untimely.

On March 30, 2015, the court denied the defendants'

motion. The defendants then amended their appeal to include a challenge to the court's denial of their motion to dismiss.

I

The defendants first claim that the court improperly denied their motion to dismiss, filed after judgment had been rendered in favor of the plaintiffs, for lack of standing. Specifically, they argue that the court lacked subject matter jurisdiction because the declaration authorized only the Declarant and the Owners Association to enforce the restrictions contained therein. We disagree.

At the outset, we set forth the relevant legal principles regarding the doctrine of standing. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 316, A.3d (2016); see also *Bongiorno* v. *J & G Realty, LLC*, 162 Conn. App. 430, 437, 131 A.3d 1230, cert. denied, 320 Conn. 924, 133 A.3d 878 (2016). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *Property Asset Management, Inc.* v. *Lazarte*, 163 Conn. App. 737, 745, A.3d (2016). Furthermore, "[i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009).

We iterate that the defendants raised the issue of standing in a postjudgment motion to dismiss. The court denied this motion with an order stating: "The court finds that the [d]eclaration does not limit enforcement of the terms of the [d]eclaration only to the [Owners] Association. The court relie[d] on the language stated in its original memorandum that the individual unit owners may enforce a declaration which is found to be a common scheme in the development." In that memorandum of decision, the court had determined that "the [d]eclaration specifically provides that its provisions run with the lots and are binding upon all Owners."

On appeal, the defendants argue that contract law principles alone control who may bring an action to

enforce a claimed violation of the declaration. They further contend that the plaintiffs, as individual lot owners, are neither parties to the declaration nor contemplated beneficiaries. In other words, the defendants contend that the issue is one of contract law, not property law,[10] and that under the terms of the declaration, the plaintiffs lack standing.

The defendants primarily rely on § 8.1 of article 8 of the declaration, which provides: "If any person or entity subject to the herein stated restrictions shall violate or attempt to violate the same, *Declarant or the* [*Owners*] *Association may*, after thirty (30) days' prior written notice, given by certified mail, return receipt requested, to the violator, *commence legal action against said person or entity in order to prevent and/or evade such violation.* Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant in order to restrain any violation and/or to recover damages on account thereof, and Declarant or the [Owners] Association, are each specifically given the right to enforce these covenants by injunction or other lawful procedure, and to recover any damages resulting from any violation from any party committing said violation. The costs incurred by any party hereunder in the enforcement of the herein stated restrictions and any damages awarded on account of any violation hereof shall become a valid lien against the Lot on which the violation occurred for the benefit of the party commencing action on account of said violation. Such lien shall be enforceable as any other lien, as more fully detailed in and in accordance with Section 4.6 above." (Emphasis added.)

The defendants claim that because § 8.1 of article 8 of the declaration specifically lists only the Declarant and the Owners Association as the entities who may enforce its restrictions, the individual owners, such as the plaintiffs, lack standing. The defendants further contend that other sections of the declaration, namely, the preamble,[11] § 3.4[12] and § 9.5,[13] further support this interpretation. We disagree with the defendants' interpretation of the declaration.

As previously noted, the defendants argue that the issue of standing must be decided solely by applying contract law. In support, they rely on our Supreme Court's decision in *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 734–35, 873 A.2d 898 (2005). In that case, the court set forth the standard of review and the applicable principles of contract interpretation. "In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction. . . . We accord the language employed in the contract a rational construction based on its com-

mon, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect according to its terms." (Citations omitted.) Id.

The court further noted: "A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) Id., 735; see also *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 259–61, 14 A.3d 284 (2011).[14]

Contrary to the defendants' argument, § 8.1 of article 8 of the declaration does not grant sole authority to the Declarant and the Owners Association. That section provides that the Declarant and the Owners Association, after giving thirty days prior written notice *may* commence legal action against a person or entity who has violated or attempted to violate the restrictions contained therein. There is no language in the declaration that these two entities are the sole parties to bring an action to stop or prevent a violation of the declaration. Indeed, one of the purposes of the declaration was to create the Owners Association and to grant it certain rights and responsibilities, including the power to use legal actions to enforce the restrictions set forth in the declaration, but it does not follow, a fortiori, that *only* the Declarant and the Owners Association had that right. In other words, there is nothing in the sections of the declaration cited by the defendants, stating that the individual owners, such as the plaintiffs, are barred from bringing an action to enforce the restrictions in the declaration that they themselves are bound by. See, e.g., *Pulver* v. *Mascolo*, 155 Conn. 644, 649–50, 237 A.2d 97 (1967) (where covenant in deed contained no express prohibition on building outbuilding and nothing in record to support claim that parties intended to prohibit construction of any and all building except one-family house with attached garage, covenant would not be extended by implication).

We also find support in the preamble for our conclusion that the declaration did not limit enforcement of its restrictions to the Declarant and the Owners Association. The language used in the preamble indicates that

the restrictions run with the land, and that fact, coupled with the circumstances in which the land was developed, indicates that there was a uniform development scheme. Therefore, a grantee, such as an individual lot owner, under these facts and circumstances, i.e., a lot owner in a business park not subject to the Common Interest Ownership Act, General Statutes § 47-214 et seq., may enforce the restrictions against any other grantee. See generally, *Castonguay* v. *Plourde*, 46 Conn. App. 251, 260, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). This particular property law doctrine is inextricably intertwined with the declaration and informs an interpretation of that contract. In other words, the language of the preamble, combined with the circumstances of the parties and the development of the business park, grafts the property law principle that permits enforcement of the restrictions by one lot owner against another.

Specifically, the preamble of the declaration stated: "[T]his [d]eclaration and all of the easements, covenants, conditions and restrictions as set forth herein shall run with the Lots and the balance of the Property for all purposes and shall be binding upon and inure to the benefit of all Owners, and their tenants, subtenants, employees, concessionaires, licensees, customer and business invitees, and their successors in interest." Thus the declaration, and the limitations contained therein, run with the land. See, e.g., *Castonguay* v. *Plourde*, supra, 46 Conn. App. 258 ("[w]here a restrictive covenant contains words of succession . . . a presumption is created that the parties intended the restrictive covenant to run with the land" [internal quotation marks omitted]).

Taking into consideration the circumstances of the parties and the transaction at issue, the creation of a business park, the use of the language that the restrictions set forth in the declaration would run with the land supports a conclusion that the Declarant intended to incorporate into the declaration the doctrine that an individual lot owner would be permitted to enforce those restrictions against any other lot owner, along with the Declarant and the Owners Association. We further iterate the principle that every presumption in favor of jurisdiction should be indulged. For these reasons, we conclude that the court properly denied the defendants' motion to dismiss for lack of standing.

II

The defendants next claim that the court improperly decided the case on a basis not raised by the plaintiffs. Specifically, they argue that the court's conclusion that the declaration did not permit a lot owner to withdraw from the Owners Association or permit the removal of a lot from the business park was not pleaded, briefed or argued before the trial court and cannot stand.[15] We agree.

In their complaint, the plaintiffs alleged that the purported amendment of the declaration, which withdrew the defendants and their lots from the Owners Association, in fact, did not effectively amend the declaration. Specifically, the complaint alleged that the amendment (1) was not enacted in accordance with General Statutes § 47-252; (2) failed to obtain sufficient votes as required by General Statutes § 47-236; (3) violated § 47-236 (d) by altering the boundaries of the property and changing the allocated interests of a unit without the unanimous consent of all the lot owners; and (4) violated § 47-236 (a) by failing to obtain 67 percent of the votes. For these reasons, the plaintiffs claimed that the amendment was void ab inito and unenforceable.

The plaintiffs argued in their posttrial brief that the amendment was not valid because at the time of the vote, Rocky Hill Development already had left the Owners Association, and without that entity, the votes of MPM and Rescue One lacked a majority. The court rejected this argument that Rocky Hill Development, the owner of lot 1, had been removed effective June 12, 2012. "In their attempt to remove Rocky Hill [Development] the [Owners] Association did not formally amend the [d]eclaration and did not record any document on the land records. The purported removal of Rocky Hill [Development] is ineffective for the same reasons the defendants' amendment is invalid. The [d]eclaration does not authorize the removal of lots or Owners from the [Owners] Association." The court also rejected the plaintiffs' contention that the amendment did not comply with the Common Interest Ownership Act, General Statutes § 47-214 et seq.

Initially, we review the allegations of the complaint to determine if the court addressed an issue that was not pleaded by the plaintiffs. "The interpretation of pleadings presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Oxford House at Yale* v. *Gilligan*, 125 Conn. App. 464, 469, 10 A.3d 52 (2010).

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A complaint should fairly put the defendant on notice of the claims against him. . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow

recovery. . . . Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant." (Citations omitted; internal quotation marks omitted.) Id., 469–70; see also *Michalski* v. *Hinz*, 100 Conn. App. 389, 393, 918 A.2d 964 (2007) ("It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . More than one century ago, our Supreme Court held that [w]hen the facts upon which the court in any case founds its judgment are not averred in the pleadings, they cannot be made the basis for a recovery. . . . The vitality of that bedrock principle of Connecticut practice is unquestionable." [Citations omitted; internal quotation marks omitted.]).

The plaintiffs' complaint did not allege that the declaration prevented a lot or owner from leaving the Owners Association. Moreover, during the trial, the plaintiffs maintained the view that the owner of lot 1 had withdrawn from the Owners Association, and therefore the vote purporting to amend the declaration lacked sufficient votes. Specifically, the plaintiffs contended that because the owner of lot 1 no longer had any voting rights, the votes of lots 2 and 7 were insufficient to sustain the proposed amendment to the declaration. Thus, despite the fact that the court may have awarded the plaintiffs the relief they sought in their complaint, we conclude that the basis of that award was not pleaded, briefed, or raised in any manner to the trial court.

On appeal, however, the plaintiffs argue that the trial court was not bound by the pleadings and the evidence because they brought a declaratory judgment action pursuant to General Statutes § 52-29. Specifically, they argue that § 52-29 is a remedial statute that should be afforded a liberal construction to carry out its purpose. See generally *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 88 Conn. App. 471, 475–76, 869 A.2d 1254, cert. denied, 274 Conn. 903, 876 A.2d 11 (2005). That liberal construction, according to the plaintiffs, includes the ability of the trial court to decide the case on matters not pleaded, briefed or argued by the parties. Under the facts and circumstances of this case, we disagree.

"The purpose of a declaratory judgment action, as authorized by . . . § 52-29 and Practice Book § [17-55], is to secure an adjudication of rights [when] there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties. . . . Subdivisions (1) and (2) of Practice Book § 17-55 respectively require that the plaintiff in a declaratory judgment action have an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations and that there be

an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties. . . . This court previously has observed that our declaratory judgment statute provides a valuable tool by which litigants may resolve uncertainty of legal obligations. . . .

"We also have recognized that our declaratory judgment statute is unusually liberal. An action for declaratory judgment . . . is a statutory action as broad as it well could be made. . . . Indeed, our declaratory judgment statute is broader in scope than . . . the statutes in most, if not all, other jurisdictions . . . and [w]e have consistently construed our statute and the rules under it in a liberal spirit, in the belief that they serve a sound social purpose. . . . [Although] the declaratory judgment procedure may not be utilized merely to secure advice on the law . . . it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 726–27, 95 A.3d 1031 (2014); see also *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 756–57, 6 A.3d 726 (2010); *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 536, 754 A.2d 153 (2000).

In support of their appellate argument, the plaintiffs rely on a statement from *Stueck* v. *Murphy Co.*, 107 Conn. 656, 661, 142 A. 301 (1928), in which our Supreme Court noted: "In an action for a declaratory judgment, we are not limited by the issues joined or by the claims of counsel." The plaintiffs also cite to *Riley* v. *Liquor Control Commission*, 153 Conn. 242, 215 A.2d 402 (1965). In *Riley*, two individual plaintiffs applied to the defendant commission for a permit to operate a liquor store in Enfield and Norwalk, respectively. Id., 243. The Great Atlantic and Pacific Tea Company (company) was listed as a "backer" on both applications. Id. A state statute prohibited a backer from having any interest in more than two alcoholic beverage liquor permits, and, on that basis, the defendant had denied the applications. Id., 244. The company was a backer of fifty-seven other liquor store permitees in the state. Id., 246. The plaintiffs appealed to the Superior Court, which held that the statute was unconstitutional. Id., 245. Our Supreme Court, however, raised a jurisdictional question and determined that because all entities having an interest in the subject matter of the complaint were not parties or provided reasonable notice, the trial court lacked jurisdiction to render a declaratory judgment.[16] Id., 248–49.

The plaintiffs also direct us to our Supreme Court's more recent decision in *Constantino* v. *Skolnick*, 294 Conn. 719, 988 A.2d 257 (2010). In that case, the plaintiff, the alleged victim of medical malpractice, commenced an action against the named defendant, a physician. Id., 724. The plaintiff filed an offer of judgment in the amount of $1 million dollars. Id. The offer, which was not accepted within thirty days as set forth in General Statutes § 52-192a (a), was deemed rejected as a matter of law. Id. Approximately nineteen months later, the plaintiff and named defendant executed an agreement to settle the case where the named defendant's insurance provider would pay the plaintiff $1 million dollars. Id. The plaintiff would agree to release his claims except for a claim for offer of judgment interest of $293,000. Id., 725. The only issue for the court was whether the insurer was required to pay the plaintiff the offer of judgment interest in the amount of $293,000. Id. Specifically, the plaintiff and the named defendant proceeded under the assumption that had the matter gone to trial, the plaintiff would have been entitled to receive $1 million dollars plus the offer of judgment interest, and agreed that their settlement should be considered a verdict and judgment in favor of the plaintiff. Id.

The plaintiff successfully moved to cite in the insurance provider as a defendant and amended his complaint to add a count seeking a declaratory judgment as to whether the insurance provider was obligated to pay both the $1 million dollars and the offer of judgment interest. Id., 726. The trial court concluded that despite the agreement of the plaintiff and the named defendant, the language of § 52-192a did not authorize offer of judgment interest because the matter had been settled before trial. Id., 727. The statutory language authorized the court to award offer of judgment interest only after a trial had occurred. Id., 734. Our Supreme Court agreed with the trial court, and stated: "[W]e conclude that the trial court properly declined to decide whether the policy limitation on damages barred payment of offer of judgment interest because it properly concluded that a necessary predicate to reaching this question had not been satisfied." Id., 730. In other words, the trial court lacked the authority to award offer of judgment interest because there had not been a trial, and the agreement of the parties could not remedy that fatal flaw. Thus, unlike this case where there is not such a predicate issue, the trial court in *Constantino* properly resolved an issue outside of the pleadings and arguments of the parties.

We are mindful, however, that our case law has recognized that there are limits to the scope of a declaratory judgment action. In *Edward Balf Co.* v. *East Granby*, 152 Conn. 319, 326, 207 A.2d 58 (1965), our Supreme Court declined to consider the issue of whether the town had included the plaintiff's land in an agriculture

zone, noting that that issue was not in the pleadings and that the plaintiff had sought only a determination of whether it could lawfully operate a stone quarry. The court refused to consider the "much broader question" because it was "not fairly within the issues in [the] case." Id.

In the present case, the trial court was not faced with a jurisdictional question or a predicate issue that the parties had failed to plead, brief or address during the trial. Instead, it based its decision on an argument that never had been pleaded, argued or briefed. Moreover, the court's reasoning was directly contrary to one of the plaintiffs' arguments. The plaintiffs had claimed that the vote was invalid because the owner of lot 1 previously had withdrawn from the Owners Association. The court concluded, sua sponte, that no party was permitted to leave under the terms of the declaration. The defendants in this case had no warning that the court would decide the case on a basis that was directly contrary to one of the arguments that had been pleaded, briefed and argued by the plaintiffs.[17] Under these facts and circumstances, we conclude, despite the broad and remedial nature of a declaratory judgment action, that the decision of the court must be reversed.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] The plaintiffs commenced this action against MPM, DiMaria, Rocky Hill Development, LLC, and Rescue One, LLC. On October 1, 2014, the plaintiffs withdrew the action against Rocky Hill Development, LLC, and Rescue One, LLC, and those two entities are not part of this appeal. We refer to MPM and DiMaria as the defendants in this opinion.

[2] See, e.g., *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 255 n.1, 14 A.3d 284 (2011) (declaration is instrument recorded and executed in same manner as deed for purposes of creating common interest community).

[3] Section 3.3 of article 3 of the declaration provided in relevant part: "The [Owners] Association shall have one class of voting membership. Each Owner and the owner or owners of any portion of the Property that is not a Lot shall be entitled to that number of votes equal to the numerator of the fraction that is each parties' Pro Rata share (rounded off to a whole number), as determined from time to time by the formula set forth on the schedule attached hereto as Exhibit C."

Lot 1 had a vote of 27.84 percent, lot 2 had a vote of 11.01 percent, lot 3 had a vote of 9.25 percent, lot 4 had a vote of 8.57 percent, lot 5 had a vote of 9.16 percent, lot 6 had a vote of 17.05 percent, and lot 7 had a vote of 15.30 percent.

[4] Gary Simonsen, the president of the Owners Association and a member of the three person Design Review Committee, testified that lot 2 was an undeveloped parcel of land.

[5] Simonsen testified that DiMaria was invited to attend the meeting of the Design Review Committee, but he did not.

[6] Specifically, Rocky Hill Development, as the owner of lot 1, claimed a vote of 27.84 percent, MPM, the owner of lot 2, claimed a vote of 11.01 percent and Rescue One, the owner of lot 7, claimed a vote of 15.30 percent for a total of 54.15 percent.

[7] See generally Practice Book § 17-56 (a) (3) and General Statutes § 52-29.

[8] The plaintiffs' complaint provided in relevant part: "29. Despite the Defendants' [Rocky Hill Development, MPM, DiMaria, and Rescue One] description of the Purported Amendment as an amendment of the Declaration, the Purported Amendment did not effectively amend the Declaration.

"30. The Defendants [Rocky Hill Development, MPM, DiMaria, and Rescue

One] failed to conduct a valid vote in accordance with the requirements of Connecticut General Statutes § 47-252.

"31. Not only the did the Defendants [Rocky Hill Development, MPM, DiMaria, and Rescue One] fail to conduct a valid vote, they failed to obtain sufficient votes required by Connecticut General Statutes § 47-236 to effectively accomplish their Purported Amendment.

"32. Pursuant to Connecticut General Statutes § 47-236 (d) '. . . no amendment may create or increase special declarant rights, increase the number of units or change the boundaries of any unit or the allocated interests of a unit, in the absence of unanimous consent of unit owners.'

"33. The Defendants [Rocky Hill Development, MPM, DiMaria, and Rescue One] failed to comply with Connecticut General Statutes § 47-236 (d) by purporting to alter the boundaries of the Property within the [Owners] Association without unanimous consent of all unit owners.

"34. The Defendants [Rocky Hill Development, MPM, DiMaria, and Rescue One] further failed to comply with Connecticut General Statutes § 47-236 (d) by purporting to change the allocated interests of a unit without the unanimous consent of all unit owners.

"35. In addition, Connecticut General Statutes § 47-236 (a) generally required the Defendants [Rocky Hill Development, MPM, DiMaria, and Rescue One] to obtain at least sixty-seven percent of the votes for any amendment because Declaration does not specifically restrict the Property to nonresidential use.

"36. The Defendants [Rocky Hill Development, MPM, DiMaria, and Rescue One] failed to obtain sufficient votes to approve the Purported Amendment."

[9] Although this issue was mentioned in the plaintiffs' preliminary statement of issues, they have not challenged on appeal the court's conclusion regarding the Common Interest Ownership Act, General Statutes § 47-214 et seq.

[10] In denying the defendants' motion to dismiss, the court referred to the doctrine that if a declaration is found to be a common scheme in a development, then the individual owners may enforce the restrictions contained in that declaration. Although the court did not directly cite to an authority for this proposition, this court has stated: "In general, restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains. . . . With respect to the second class of covenants, any grantee under such a general or uniform development scheme may enforce the restrictions against any other grantee." (Internal quotation marks omitted.) *Cappo* v. *Suda*, 126 Conn. App. 1, 4, 10 A.3d 560 (2011).

We also have stated that enforcement by any grantee under a general development scheme comes from the doctrine of the enforceability of uniform restrictive covenants. "With respect to this type of covenant, any grantee under a general or uniform development scheme may enforce the restrictions against any other grantee. . . . The doctrine of the enforceability of uniform restrictive covenants is of equitable origin. The equity springs from the presumption that each purchaser has paid a premium for the property in reliance on the uniform development plan being carried out. While that purchaser is bound by and observes the covenant, it would be inequitable to allow any other landowner who is also subject to the same restriction to violate it." (Citations omitted; internal quotation marks omitted.) *Mannweiler* v. *LaFlamme*, 46 Conn. App. 525, 535–36, 700 A.2d 57, cert. denied, 243 Conn. 934, 702 A.2d 641 (1997); see also *Pulver* v. *Mascolo*, 155 Conn. 644, 650, 237 A.2d 97 (1967); *Contegni* v. *Payne*, 18 Conn. App. 47, 51–52, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989).

[11] The preamble to the declaration provides in relevant part: "WHEREAS, in order to develop the Property as a functionally integrated business park, Declarant desires to establish and create certain easements, covenants, and restrictions affecting the Property and to create an '[Owners] Association' (as hereinafter defined) to maintain, administer and enforce these covenants and restrictions and the levy, collection and disbursement of the assessments and charges hereafter created . . . . "

[12] Section 3.4 of article 3 of the declaration provides in relevant part: "The members of the [Owners] Association shall elect a three member Board of Directors from amongst the Owners, which Board shall oversee all activities of the [Owners] Association and which shall call meetings of the [Owners] Association as necessary. The Board of Directors shall have, subject to the limitations contained in this Declaration and the Act, the powers and duties

necessary for the administration of the affairs of the [Owners] Association which shall include, but not be limited to, the following . . . (f) Institute, defend or intervene in litigation or administrative proceedings in the [Owners] Association's name on behalf of the [Owners] Association . . . ."

[13] Section 9.5 of article 9 of the declaration provides in relevant part: "No delay or omission by the Declarant or the [Owners] Association in exercising any right or power accruing upon any default, noncompliance or failure of performance of any of the provisions of this Declaration by any Owners shall be construed as a waiver thereof."

[14] As a result of our conclusion that the plaintiffs have standing under the language of the declaration, we express no opinion on the defendants' arguments regarding the scope of our Supreme Court's decisions in *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, supra, 300 Conn. 254, and *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, supra, 273 Conn. 724. We note, however, that neither of those cases addressed the issue of standing, or that consideration of standing was limited to contract law principles.

[15] The defendants also challenge the court's conclusion that § 9.10 of article 9 of the declaration does not permit the withdrawal from the Owners Association or the lot from the business park. As a result of our conclusion that it was improper for the trial court to base its decision on a claim that was not pleaded, briefed or argued by the plaintiffs, we need not address the merits of this claim.

[16] In *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 289, 914 A.2d 996 (2007), our Supreme Court concluded that "the failure to notify interested persons in a declaratory judgment action does not implicate the court's subject matter jurisdiction. . . . We therefore now overrule our past precedent in which we conclude that the lack of notice to interested persons of the pendency of declaratory judgment action deprives the court of subject matter jurisdiction."

[17] We note that as a general rule, the principles of due process and fundamental fairness require that the parties be provided sufficient notice that the court intends to consider an issue and a meaningful opportunity to be heard on that issue. See, e.g., *Valentine* v. *Valentine*, 149 Conn. App. 799, 803–805, 90 A.3d 300 (2014); *Styrcula*, v. *Styrcula*, 139 Conn. App. 735, 744–48, 57 A.3d 822 (2012); see generally *State* v. *Connor*, 321 Conn. 350, 370–72,    A.3d    (2016).